ELIZA M. BROWNELL, Defendant in Error, *v.* THE PACIFIC RAILROAD COMPANY, Plaintiff in Error.

1. *Practice, civil—Actions—General verdict, when petition sets out different causes of action, bad.*—When a petition sets out several distinct causes of action, a verdict for an entire and gross sum can not be sustained. There should be a separate assessment on each cause or count, in order that the court may know how the issues were found and what amount was assessed on each count. But if there is one entire cause of action, and one good count in the declaration, a general verdict and general assessment of damages will answer.

| | |
|---|---|
| 47 | 239 |
| 97 | 169 |
| 32a | 47 |
| 47 | 239 |
| 36a | 684 |
| 47 | 239 |
| 47a | 193 |
| 47 | 239 |
| 124 | 526 |
| 47 | 239 |
| 61a | 264 |
| 47 | 239 |
| 64a | 332 |
| 47 | 239 |
| 164 | 284 |
| 47 | 239 |
| 92a | 1115 |
| 47 | 239 |
| 101a | 1700 |

2. *Practice, civil — Damages, action for, against railroad company—Cause of action — Count — General verdict.* —In suit against a railroad company for the killing of plaintiff's husband, the petition embraced two counts, framed respectively on the second and third sections of the act relating to damages (Wagn. Stat. 519–20). The first count charged that the killing was caused indirectly by the corporation, through the negligence, unskillfulness, and criminal intent of its employees; the second, that the death was owing directly to the neglect or default of the company. *Held,* that the two counts contained but one subject-matter of complaint, *viz:* the killing of complainant's husband; and therefore but one cause of action, although stated in different ways to meet the evidence. Hence there could be but one verdict and one assessment.

A verdict based on either section would be a complete bar to a prosecution of the action on the other section. And where such is the case the cause of action must necessarily be the same.

3. *Evidence — Dying declarations, when admissible in civil actions as part of the res gestæ.* — The doctrine permitting dying declarations, as such, to be given in evidence, applies exclusively to criminal prosecutions for felonious homicides, and has no reference to civil cases. But in suits of the latter description, declarations of dying persons are sometimes admitted on a different principle. Thus, such a declaration in regard to the cause of death growing directly out of, and made immediately after the happening of, the fatal event, would be admissible as constituting a part of the *res gestæ.*

### *Error to First District Court.*

*Ewing & Smith,* for plaintiff in error.

I. There are two counts in plaintiff's petition upon different sections of the law. The jury rendered a general verdict when it should have been special, and for this cause the Circuit Court ought to have granted a new trial. There are clearly two causes of action attempted to be set out in the petition. First, under the second section of the act in relation to damages, the damages are liquidated—fixed at $5,000, no more, no less—and the jury are bound to find their verdict for that sum if at all. The second count is based upon the third section of said act, and under which the jury would be authorized to find for plaintiff from $1,000 to $5,000. If this is so, then the verdict of the jury ought to have been special, and to have shown upon which count they based their verdict. The jury could not, under the law, find for the plaintiff upon both counts of the petition, because that would be giving damages twice for the same thing. If plaintiff

had sued alone under the second section of the law and recovered $5,000 damages, of course he could not then have sued under the third section and recovered again for the same negligence — the same killing.     Then if this is true, the two counts in the petition for the same offense—two causes of action in the same petition for the same killing, but for different damages—are surely not maintainable ; one liquidated the other.     (41 Mo. 405; Pitts v. Fugate's Adm'r, 36 Mo. 202 ; Clark's Adm'r v. Hann. & St. Jo. R.R. Co., 21 Mo. 149 ; Downing *et al.* v. Bourlier, 19 Mo. 551 ; Mooney v. Kennett, 1 Mo. 401 ; Fenwick v. Logan, *id.* 495.)

II. The Circuit Court erred in admitting in evidence the dying declarations of the deceased.     Dying declarations are not competent evidence in civil cases under any circumstances.     (Marshall v. C. & G. E. R.R. Co., 48 Ill. 475 ; Am. Law Reg. 1870, p. 262 ; 1 Greenl. Ev., §§ 156, 162, 346 ; Rex v. Mead, 2 B. & C. 605, 608, note ; 15 Johns. 286.)

*H. B. Johnson*, Attorney-General, for defendant in error.

It has been held that dying declarations are admissible in civil just the same as in criminal cases (Clymer v. Littler, 3 Burr. 1255 ; Wright v. Lettler, 1 W. Bl. 346 ; Rex v. Mead, 2 B. & C. 605 ; McFarland v. Shaw, 2 N. C. Law Rep. 105 ; Aveson v. Kinnaird, 6 East, 195 ; Durham v. Beaumont, 1 Campb. 211 ; Doe v. Ridgway, 4 B. & Ad. 55 ; Mataun v. Ammon, 1 Grant's Cases, 123 ; Wilson v. Boerum, Anthon, 174 ; 2 Halst. Ev. 461), the rules of evidence in both classes of cases being the same. (State v. Hays, 23 Mo. 314 ; Stone's Case, 25 Howell's St. Tr. 1314 ; Melville's Case, 29 Howell's St. Tr. 764.)     This is clearly so when suit is brought for the death of a person, and the dying declaration is offered to establish the cause of death. (1 Phil. Ev., 5th Am. ed., 286, 287; 1 Greenl. Ev., § 156, note.) But the declaration or exclamation of deceased admitted in evidence was competent upon the further ground that it was a part of the *res gestæ*.     (Ins. Co. v. Moseley, 8 Wall. 397; Commonwealth v. Pike, 3 Cush. 181 ; Baker v. Griffin, 10 Bosw. 140 ; Frink v. Coe, 4 Greene, Iowa, 555 ; State v. Ah Loy, 5 Nevada, 99 ; 1 Greenl. Ev., *supra.*)     The authority of the

above cases is not impaired by the case of Ill. Central R.R. Co. v. Sutton, 42 Ill. 438. The view here presented in regard to dying declarations was not considered in the case of Marshall v. C. & G. E. R.R. Co., 48 Ill. 475, or in the case of Daily v. New York, etc., R.R. Co., 32 Conn. 356.

WAGNER, Judge, delivered the opinion of the court.

There are no objections urged here against the instructions given by the court below, and an inspection of the record has led us to the conclusion that there are but two questions requiring any special consideration. The first is the nature of the petition and the sufficiency of the verdict; and the second is whether the declarations of Brownell, just previous to his death and shortly after the accident happened, were admissible in evidence.

The suit was commenced in the Circuit Court against the defendant for damages for the death of the plaintiff's husband. The petition contains two counts. The first is based upon the second section of the damage act, charging that Charles F. Brownell, the husband, through the negligence, unskillfulness, and criminal intent of the officers, agents, servants, and employees of defendant, whilst running and conducting a certain locomotive and train of cars belonging to defendant, was violently thrown, with said locomotive and train of cars, from the railroad track of defendant and instantly killed, and asks damages to the amount of $5,000. The second count is based upon section 3 of the same act, and charges that by reason of the neglect and default of the defendant in not providing and using a safe and secure locomotive and headlight, in not providing competent and reliable switchmen, etc., the said husband was violently thrown, with said locomotive, from the railroad track and instantly killed, and asks judgment for $5,000. The answer was simply a denial of the matters set forth in the petition. The cause was tried before a jury, who, after hearing the evidence, returned a general verdict in favor of the plaintiff for $4,500. Upon this verdict the court entered up judgment, and the defendant appealed.

The first question is, was the general verdict rendered in the cause the proper one, or should there have been a verdict on each count? The answer to this question depends upon the inquiry, did the two counts in the petition embrace each a separate and distinct cause of action? If they did, the verdict is bad, and the damages should have been assessed upon each cause of action separately. When the petition sets out several distinct causes of action, a verdict for an entire and gross sum can not be sustained. There should be a separate assessment on each cause or count, in order that the court may know how the issues were found and what amount was assessed on each count. (Mooney v. Kennett, 19 Mo. 551 ; Clark's Adm'r v. Hann. & St. Jo. R.R. Co., 36 Mo. 215 ; Pitts v. Fugate, 41 Mo. 405 ; State *ex rel.* Collins v. Dulle *et al.*, 45 Mo. 269.) But if there is one entire cause of action, and one good count in the declaration, a general verdict and a general assessment of damages will answer. (Clemens v. Collins, 14 Mo. 604.)

It is conceded that there might be a cause of action based on the second section of the act concerning damages, and a different cause founded on the third section, but this certainly could not be done in the same petition and against the same party. The second section applies where the injury is occasioned indirectly by the corporation or owner through the negligence, unskillfulness, or criminal intent of the officers or employees ; the third section, where the injury is committed directly by the wrongful act, neglect or default of another. To constitute two causes of action there must be two subjects of complaint. But in the present case there is but one injury, one subject-matter of complaint — the killing of the plaintiff's husband. There being but one cause of action, there could be only one assessment of damages. There could not be a verdict for causing the death one way, and another verdict for causing the death in a different way. The law declares that if the injury is caused under the circumstances mentioned in one section, the damages shall be for a fixed amount; and if under the circumstances mentioned in another section, the damages shall not exceed a certain amount. It is for the jury to determine from the evidence whether the injury was caused and the death

resulted under the circumstances as described either in the one section or the other, and then to assess the damages accordingly. There is but one cause of action stated in the petition, and that is the killing, although it is stated in different ways to meet the evidence, which may show that it occurred either in the manner mentioned in one section or the other. It is very certain that a verdict based upon either section would be a complete bar to the prosecution of an action on the other, and where such is the case the cause of action must necessarily be the same.

The next question is in reference to the admission of the declaration of Brownell. The accident happened in consequence of a switch being left open on the defendant's track. There is no dispute or controversy about the fact that the switch was left open. Immediately after the accident, when Brownell was restored to consciousness, and just before he died, he said, * * —"if it had not been for that man who left the switch open." This was objected to, but the objection was overruled and the testimony admitted. As a dying declaration it was clearly inadmissible, for the modern decisions clearly establish the doctrine that the rule permitting dying declarations to be given in evidence applies exclusively to criminal prosecutions for felonious homicides, and has no reference to civil cases. But every declaration of a deceased person is not to be rejected upon this principle. Where a declaration is made by a deceased person cotemporaneously, or nearly so, with a main event, by whose consequence it is alleged he died, as to the cause of that event, though generally the declarations must be cotemporaneous with the event, yet where there are any connecting circumstances, they may, even when made some time afterward, form a part of the whole *res gestæ*. (Insurance Co. v. Moseley, 8 Wall. 397.)

In The Commonwealth v. Pike, 3 Cush. 181, the indictment was for manslaughter; the defendant was charged with killing his wife. It appeared that the deceased ran up stairs from her own room in the night, bleeding and crying "murder!" Another woman, into whose room she was admitted, went, at her request, for a physician. A third person who heard her cries went for a watchman, and, on his return, proceeded to the room where she

was. He found her on the floor bleeding profusely. She said the defendant had stabbed her. The defendant's counsel objected to the admission of this declaration in evidence. The objection was overruled. The Supreme Court of Massachusetts held that the evidence was properly admitted. It was said that the evidence was " of a nature *res gestæ*," and that the time when it was made was so recently after the injury was inflicted as to justify receiving it upon that ground. In Hanover R.R. Co. v. Coyle, 5 Penn. St. 402, where a peddler's wagon was struck, and the peddler injured by a locomotive, the Supreme Court of Pennsylvania said : " We can not say that the declaration of the engineer was no part of the *res gestæ*. It was made at the time, in view of the goods strewn along the road by the breaking up of the boxes, and seems to have grown directly out of and immediately after the happening of the fact." The declaration was held to be " a part of the transaction itself."

The Insurance Company v. Moseley, *supra*, was an action upon a policy of insurance. The question was as to whether the deceased Moseley came to his death by an accident inflicting personal injury, or whether he died of disease. To show that his death was caused by an injury received in consequence of an accident, his wife and son were called and testified that he had left his bed in the night, and that when he came back he said that he had fallen down stairs, and complained of being hurt. He died in a short time thereafter, and his death was believed to be the result of the injuries he received when falling. Upon an extended review of the authorities, the Supreme Court of the United States held that although the statements of Moseley were not admissible in evidence as dying declarations, yet they were properly receivable as part of the *res gestæ*. Judge Swayne, in his opinion, says : " In the complexity of human affairs, what is done and what is said are often so related that neither can be detached without leaving the residue fragmentary and distorted. There may be fraud and falsehood as to both ; but there is no ground of objection to one that does not exist equally to the other. To reject the verbal fact would not unfrequently have the same effect as to strike out the controlling member from a

sentence, or the controlling sentence from its context.    *    *    *
Where sickness or affection is the subject of inquiry, the sickness
or affection is the principal fact.' The *res gestæ* are the
declarations tending to show the reality of its existence and
its extent and character. The tendency of recent adjudication
is to extend rather than to narrow the scope of the doctrine.
Rightly guarded in its practical application, there is no principle
in the law of evidence more safe in its results. There is none
which rests on a more solid basis of reason and authority. We
think it was properly applied in the court below. In the ordi-
nary concerns of life no one would doubt the truth of these
declarations, or hesitate to regard them, uncontradicted, as con-
clusive. Their probative force would not be questioned. Unlike
much other evidence, equally cogent for all the purposes of
moral conviction, they have the sanction of law as well as of
reason. The want of this concurrence in the law is often deeply
to be regretted. The weight of this reflection, in reference to the
case under consideration, is increased by the fact that what was
said could not be received as a dying declaration, although the
person who. made it was dead, and hence could not be called
as a witness."

The declaration of Brownell, in reference to the switch, grew
directly out of and was made immediately after the happening
of the fact. No one would hesitate to act on such evidence in
his own concerns. It was so intimately connected that it made
a part of the transaction itself, and, I think, clearly came within
the doctrine of *res gestæ*. In this view of the case I am of the
opinion that the judgment should be affirmed. Judge Currier
concurs; Judge Bliss absent.