DANIEL O'CONNOR and another *vs.* CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

September 13, 1880.

**Animals Trespassing on Railway.**—Rule as to liability for injury to animals trespassing on a railroad track, laid down in *Locke* v. *First Div. St. Paul & P. R. Co.*, 15 Minn. 350, and *Witherell* v. *Milwaukee & St. Paul Ry. Co.*, 24 Minn. 410, followed.

**Erroneous Statement of Evidence by Court.**—If the court, in stating what the evidence is claimed to be, so states it that the jury may be misled, the party excepting must specifically call its attention to it, so that it may be at once corrected.

**Railway Accident — Declarations of Officials as Part of the Res Gestæ.**—In case of an accident by a railroad train running upon and injuring horses on the track, what was said by the engineer to the conductor of the train immediately after the accident and after the train had stopped, and while they were examining to ascertain what mischief had been done, indicating when he first saw the horses on the track, there not appearing anything but the occurrence to cause or produce the statement, may be proved by the plaintiff as part of the *res gestæ*.

Evidence *held* sufficient to sustain the verdict.

Action to recover the value of certain horses of plaintiff, which were struck and killed by a freight train on a trestlework on the river division of the plaintiff's railway, a few miles south of St. Paul. The train was going north. It was claimed by the plaintiff that the horses went upon the track at a point 1,920 feet south of the trestle, where there was a private crossing and gate. A culvert, which horses could not cross, was situated 870 feet south of the crossing, and 600 feet north of plaintiff's fence. The track was straight from the culvert north to the gate, and from the gate north to the crossing. The road-bed from the crossing to the trestle was of such a character that a horse could not leave it. There was evidence that the locomotive whistle was sounded at the fence, and that the whistling was kept up until the horses were struck, and that it was such as is used to drive cattle from the track. The time of the accident was shortly before 9 o'clock in the evening of September 16, 1878. The plaintiff claimed that the engineer must have seen the horses while the train was south of the culvert, and that he was guilty of negligence in not checking the train. At the trial in the district court for Ramsey county, before *Wilkin*, J., the plaintiff testified that some time after the accident, and when the locomotive (which had been thrown from the track) had been replaced upon it, and the train was ready to start again, the conductor came to the caboose and said to the brakemen, "Now you get right up there, and go to where you can get hold of the brakes." The same witness also testified that when he first arrived at the scene of the accident, and while the defendant's men were at work about the train, and talking about the accident, the engineer of the train said to the conductor, "I thought I saw five horses coming in the gate out of the crossing." The testimony in each case was duly objected to, and exception taken. The jury found for the plaintiff, a new trial was refused, and the defendant appealed.

*Bigelow, Flandrau & Clark,* for appellant.

*Davis, O'Brien & Wilson,* for respondent.

GILFILLAN, C. J. Under the rule laid down by this court in *Locke* v. *First Div. St. Paul & Pac. R. Co.,* 15 Minn. 350, and approved and followed in *Witherell* v. *Milwaukee & St. Paul Ry. Co.,* 24 Minn. 410, as to the liability of railroad companies for injuries done to animals trespassing upon their tracks, there was sufficient evidence to sustain the verdict in this case. If the jury believed, as they seem to have done, the testimony of plaintiffs' witnesses as to the location of the train when those in charge appear to have discovered the horses on the track, as to the character of the track, and the difficulty for horses to get off it when frightened, as to the probable speed of the train when it struck them, and that of witnesses for defendant as to the distance within which that train could have been stopped, they might very well find that it was great negligence on the part of those in charge of the train that they did not sooner check its speed, so as to have it entirely under control before it reached the point where the accident happened.

The exception that the court did, on its charge, misstate the evidence of Niccault seems to have arisen from a misunderstanding of what the court said. In that part of its charge it was not stating what Niccault swore to, but only what plaintiff claimed his evidence to be. If the jury might be misled by this statement of the court, its attention should have been specifically called to it, so that it might be at once corrected.

We cannot see how the admission of what the conductor said to the brakemen could have had any influence with the jury. It is, therefore, immaterial whether it was admissible or not. What the engineer said to the conductor was calculated to affect the finding. Its admission raises the only serious question in the case—one of great difficulty. It appears to have been said immediately after the horses were struck and the train stopped, and while those in charge were

examining to ascertain what mischief had been done, and was in direct connection, in time, with what had just occurred, and related to what they were then at.

To make declarations of an agent evidence against his principal, they must not only have been made while he was engaged in the business of the principal, but they must be a part of the transaction out of which the controversy arises. It is not enough that they refer to or narrate the transaction after it is past; they must be so connected in time and circumstances with the principal fact as to be a part of it. When declarations of an agent or of a party himself are so closely connected with the principal fact as to be a part of the *res gestæ*, is often a very nice question to determine. There are on the point many decisions which appear difficult to reconcile with each other. Reference to a few of them will be sufficient.

Declarations of the captain of a steamer as to the cause of an accident, made two and a half days after the accident, but on the same voyage, were excluded. *Packet Company* v. *Clough*, 20 Wall. 528.

Where the accident happened while a passenger was getting on a car, the declaration of a brakeman, made a short time after, that the train should have stopped longer, was held inadmissible, because not a statement explanatory of anything in which he was then engaged, but relating to a past transaction. *Michigan Central R. Co.* v. *Coleman*, 28 Mich. 440.

Statements of the locomotive engineer, made a few days after an accident, as to its cause, held inadmissible. *Robinson* v. *Fitchburg & Worcester R. Co.*, 7 Gray, 92. Statement of a party injured by a railroad accident, relating how it occurred, immediately after the accident, held no part of the *res gestæ*. *Cleveland, Columbus, etc., R. Co.* v. *Mara*, 26 Ohio St. 185. Declarations of the locomotive engineer as to a railroad accident, made some time after and distinct from it, held inadmissible. *Michigan Central R. Co.* v. *Gougar*, 55 Ill. 503. Subsequent declarations of a brakeman, as to how

a car was burned, held inadmissible. *Michigan Central R. Co.* v. *Carrow,* 73 Ill. 348. In a case of collision between two trains, the subsequent statement of a flagman, how far he had gone back to flag the coming train, held inadmissible. *Pennsylvania R. Co.* v. *Books,* 57 Pa. St. 339. The statement of an omnibus conductor, immediately after an accident, as to the conduct and character of the driver, held no part of the *res gestæ. Agassiz* v. *London Tramway Co.,* Fisher's Ann. Dig. 1873, p. 246.

In *Luby* v. *Hudson River R. Co.,* 17 N. Y. 131, the plaintiff was run against and injured by a car drawn by horses. The car was stopped, and the driver arrested by a policeman. In the trial the policeman was allowed to testify that, upon arresting the driver as he was getting off the car and out of the crowd surrounding it, he asked him why he did not stop the car, to which the driver replied the brake was out of order. This was held error. The court said: "The declaration was no part of the driver's act for which the defendants were sued. It was not made at the time of the act, so as to give it quality and character. The alleged wrong was complete, and the driver, when he made the statement, was only endeavoring to account for what he had done." It may be remarked in regard to this case, and also several others of the cases cited, that, while the statement appears to have been closely connected in time with the principal fact, it was made to a stranger to the principal's business, and in narration of what had just occurred.

On the other hand, the declaration of a person stabbed, as to who stabbed him, made within twenty seconds after it, was held a part of the *res gestæ,* and admitted, on the ground that it was not a narrative statement of a past transaction, but an exclamation or statement contemporaneous with the main transaction, forming a natural and material part of it. *Commonwealth* v. *Hackett,* 2 Allen, 136.

So, where the thing to be established was that a death was caused by accident, it being shown that the person arose and

went down stairs in the night, his statement on his return that he had fallen down stairs and hurt himself badly was held a part of the *res gestæ. Insurance Company* v. *Mosley*, 8 Wall. 397.

So, where the action was for injury from a train of cars running over plaintiff's wagon and horses, driven by his servant, it was held the defendant might prove a conversation with the servant at the time of the accident and in relation to it. *Toledo & Wabash Ry. Co.* v. *Goddard*, 25 Ind. 185.

In an action against a railroad company for damages caused by delay in the carriage of cattle, the statements relating to the delay of the conductor, made while he had control of the train in which the cattle were, were held part of the *res gestæ. Sisson* v. *Cleveland & Toledo R. Co.*, 14 Mich. 489.

In an action against a railroad company for wrongful expulsion from one of its trains, a conversation had immediately after the expulsion, and serving to illustrate its character, between plaintiff and the offending brakeman, was held part of the *res gestæ. Bass* v. *Chicago & Northwestern Ry. Co.*, 42 Wis. 654.

The declarations of a person injured, (from which he afterwards died,) as to the cause of the injury, and made immediately after, and growing directly out of the happening of the fact, were held part of the *res gestæ. Brownell* v. *Pacific R. Co.*, 47 Mo. 239. So, the declaration of a person injured, as to how she was injured, made from one to four hours afterwards to her physician, was held admissible. *Harriman* v. *Stowe*, 57 Mo. 93.

The accident being the running of a railroad train against a peddler's wagon, and the destruction of his goods, the trial court admitted evidence of what was said at the time of the accident, by the engineer in charge of the train, as to negligence in running it. This was held no error by the supreme court, which said: "We cannot say that the declaration of the engineer was no part of the *res gestæ.* It was made at the time of the accident, in view of the goods strewn along

the road by the breaking up of the boxes, and seems to have grown directly out of and immediately after the happening of the fact. The negligence complained of being that of the engineer himself, we cannot say that his declarations made upon the spot at the time, and in view of the effects of his conduct, are not evidence against the company as a part of the very transaction itself." *Hanover R. Co.* v. *Coyle*, 55 Pa. St. 396.

In must be apparent that, in case of accidents, declarations which will give quality and character to and illustrate them will nearly always be made after and not before they happen, so that if such declarations are to be excluded because not exactly contemporaneous with the main fact, they will very rarely, if ever, be admitted. No case has distinctly laid down the rule that they are not part of the *res gestæ* merely because made after the main fact, without regard to how long after. How long after the fact they may be made, and still be admissible, must depend on the circumstances of each particular case.

In *Lund* v. *Tyngsborough*, 9 Cush. 36, the court said: "When the act of a party may be given in evidence, his declarations made at the time, and calculated to elucidate and explain the character and quality of the act, and so connected with it as to constitute one transaction, and so as to derive credit from the act itself, are admissible in evidence." And in regard to the question of time: "So declarations, to be admissible, must be contemporaneous with the main fact or transaction; but it is impracticable to fix, by any general rule, any exact instant of time, so as to preclude debate and conflict of opinion in regard to this particular point;" and, "In general, the *res gestæ* mean those declarations, and those surrounding facts and circumstances, which grow out of the main transaction, and have those relations to it which have been above described."

We have made these quotations because that is an instructive case, and states, perhaps more clearly than any other, the principles which are to serve as a guide on this subject. The

declarations, while they need not be exactly contemporaneous with the fact, must be "so connected with it as to constitute one transaction, and so as to derive credit from the act itself;" and they must "grow out of the main transaction." All the cases concede these propositions. But, in reference to declarations after the main fact has happened, what is meant by "connected with" and "growing out of it?" We take it to be this: that the declaration must be caused or produced by the fact; as, in the case in 2 Allen, the exclamation or statement as to who did the stabbing was caused by the fact of stabbing, no other cause appearing to have intervened to cause the statement. And so, in the case in 8 Wall., no other cause for the statement but the accident could have influenced the party making it. And in the case in 55 Pa. St., the declarations were evidently produced by the accident and its results. But in the case in 17 N. Y., although the declaration of the driver was made immediately after the fact, it was evident that there might be another cause for it than the accident itself—to wit, the driver's desire to shield himself from blame.

It is evident that whether the declaration is directly connected with, and growing out of, the main fact, does not depend on the time which has elapsed between them, though it must always be an important element in the consideration of the question; a considerable time may elapse, and yet the declaration be a part of the *res gestæ*. It may be made immediately upon the fact, and the circumstances be such as to exclude it. Each case must depend on its own peculiar circumstances, and be determined by the exercise of sound judicial discretion. We are of opinion that the declaration of the engineer to the conductor, made as it was immediately after the accident, by one person then engaged in the defendant's business to another similarly employed, in reference to what had just occurred, and what they were then at in consequence of such occurrence, there not appearing any cause other than such occurrence to produce or influence the decla-

ration, was connected with, and grew directly out of, the main fact—the accident—so as to be a part of the same transaction, and that there was no error in admitting it.

Order affirmed.