HENRY KEYSER v. THE CHICAGO & GRAND TRUNK RAILWAY COMPANY.

[See 56 Mich. 559.]

*Negligence—Injury to infant on railroad track—Evidence—Statements of agent—Failure to fence track—Duty of engineer—Imputed negligence.*

In this case the judgment below is affirmed, but the Reporter, being in doubt as to how far the propositions stated in the opinion of Justice SHERWOOD are concurred in by a *majority* of the judges, thinks it safer to refer to the opinions for a settlement of that question.

Error to St. Clair. (Stevens, J.) Argued April 13 and 14, 1887. Decided June 23, 1887.

Case. Defendant brings error. Affirmed. The facts are

stated in the opinion, and in the opinion found in 56 Mich. 559.

*O'Brien J. Atkinson* and *Geer & Williams,* for appellant.

*James L. Coe (E. G. Stevenson,* of counsel), for plaintiff.

SHERWOOD, J. This action is brought to recover for personal injuries received by the plaintiff, when about two years and six months old, from a passing train going east over its road in the township of Kimball, in the county of St. Clair. The case was before us at the April term, 1885 (see 56 Mich. 559), and a new trial was granted, which has been had, and the plaintiff allowed to recover a judgment for $7,000. The defendant brings error, and 37 assignments are presented for our consideration. They are, however, classified and presented by counsel for defendant in their briefs under nine propositions, which will be discussed in their order.

The negligence of the defendant relied upon and alleged in the declaration is:

"1. In running its passenger train over its road at a high rate of speed, without keeping a proper lookout.

" 2. In not fencing its line of road for more than six months prior to the injury.

"3. In omitting to give the statutory signals at the highway crossing."

The essential facts will be found stated in the opinion given in the former case in 56 Mich. The testimony on several points is, however, somewhat different from that contained in the other record.

The first proposition presented by defendant's counsel relates to the statements made by Conger, the engineer, shortly after the injury occurred to the child. These are referred to in the first, fourth, eleventh, and twelfth assignments of error. Byron Buckeridge, a witness for plaintiff, tes'ified that he was very near the child when the engine struck him, and threw him on one side of the track into a

pile of logs; that he was there as soon as any one; that the train did not go far until it stopped and backed up, and took the child on the train; that Clinton Conger, the engineer, and John McIntosh, were the only persons he saw there before the child was put on the train. The witness was then allowed to testify, against the objection of defendant that the testimony was incompetent, and that any statement the engineer could or might have made at the time could not bind the company, that Conger stated why the train did not stop, according to his recollection,—that they saw the child a half mile ahead, and thought it was a pig.

When the train arrived at Port Huron, witness Inslee testified that he heard of the child being injured on the arrival of the train; that he was employed in the mechanical department of the road at Port Huron; that the engineer and fireman are connected with that department, and they had to make out a written report of any accident occurring on the trip made by them, and that such report, at the time this accident occurred, came to him first; that it was his duty to attach the report to the trip-sheet containing other reports, and send them to the heads of the department at Battle Creek. The witness was then asked by counsel for the plaintiff:

" What did he [the engineer] state to you, in reference to how he came to run upon the child, on the arrival of the train on that day?"

The witness was allowed to state, under a similar objection made to the testimony of Buckeridge, that,—

" In coming down the hill after leaving Thornton, he saw some object between the rails, and—supposing it to be a pig, as he thought, and did not know what it was until he got very close to it, and it raised up and faced his engine, and he did not have time to stop—he applied the brakes, and he reversed the engine, but couldn't stop. He said he was about half a mile away when he first saw it, and thought it was a pig."

The remaining two questions upon this subject were propounded to witness Conger while he was giving his testimony for the defendant, upon his cross-examination:

"1. Did you not tell Byron Buckeridge and others, at the time you got off the train and picked up the child, or they were picking him up, that you thought it was a pig, you saw it half a mile off?

"2. Haven't you been around to see Byron Buckeridge, and talk with him several times about it before this week?"

These questions were objected to as immaterial. To the first question the witness answered in the negative, but admitted that he might have told witness Inslee so on his arrival at Port Huron. To the second he answered that he had talked with Buckeridge twice on one branch of the subject.

The questions upon the cross-examination were proper, as tending to show that the witness had a different understanding when the accident occurred, and the version of the affair was different from what he gave on his direct examination. I think these statements of the engineer, made at the place where the accident occurred, and at the time he backed up the train and took the boy on, as to the circumstances and the reason he gave for the management of the engine and train in approaching the boy, and how he came to run upon him, were so connected with the acts complained of as to become a part of the *res gestæ*, and the testimony was properly received.

There is more question in regard to his statements made to Inslee at Port Huron. It was a part of the engineer's duty to give to Inslee a truthful report of the accident, and all the circumstances under which it occurred; and, from the time the boy was hurt until the train arrived at Port Huron, the engineer and conductor had the child with them on the cars, and the company's liability for proper care and safety of the boy continued, to some extent, until the train arrived at that

place, which was but a few miles from where the accident occurred.

I do not understand that declarations by persons whose duty it is to make them, in order to constitute a part of the *res gestæ*, are required to be precisely concurrent in point of time with the principal transaction. If they spring from it, and tend to explain it, are voluntary and spontaneous, and are made at a time so near as to preclude the idea of design to misrepresent, that they may be regarded as so nearly contemporaneous as to be admissible.   *Scaggs v. State*, 8 Smedes & M. 722; *Insurance Co. v. Mosley*, 8 Wall. 397; *Com. v. M'Pike*, 3 Cush. 181; *Harriman v. Stowe*, 57 Mo. 93; *Crookham v. State*, 5 W. Va. 510; *Boothe v. State*, 4 Tex. App. 202; *Reg. v. Abraham*, 2 Car. & K. 550; *Hanover R. R. Co. v. Coyle*, 55 Penn. St. 402; *Brownell v. Pacific R. R. Co.*, 47 Mo. 239; *People v. Vernon*, 35 Cal. 49; *Handy v. Johnson*, 5 Md. 450; *Carter v. Buchannon*, 3 Ga. 513; *Mitchum v. State*, 11 Id. 633; *Courtney v. Baker*, 2 Jones & S. 529; *O'Connor v. Chicago, M. & St. P. R'y Co.*, 27 Minn. 166 (6 N. W. Rep. 481); *Armil v. Chicago, B. & Q. R'y Co.*, 70 Iowa, 130 (30 N. W. Rep. 42); *State v. Horan*, 32 Minn. 394 (20 N. W. Rep. 905); *Lund v. Tyngsborough*, 9 Cush. 36

I think this view will be found, upon examination of the later authorities, to be sustained, and such I believe to be the tendency of our own decisions, so far as any have been made. *Sisson v. Cleveland & T. R. R. Co.*, 14 Mich. 496; *Mabley v. Kittelberger*, 37 Id. 362; *Cleveland v. Newsom*, 45 Id. 63. See, also, Greenl. Ev. § 108, and cases cited.

Our attention is called to what is said by Mr. Justice CHAMPLIN in *Patterson v. Wabash, etc., Ry. Co.*, 54 Mich. 91; but it will appear by examination of the opinion it was held that the statement of the brakeman was no part of the *res gestæ*,—

" For the reason that such admission was not made while in the execution of his duty, or while the act to which it

referred was being performed, and he was not so connected with the corporation defendant as to make his admissions the admissions of defendant."

Not so in this case. At the time and place this accident occurred, the engineer had complete control of his engine, and management of the same. He directed all of its movements; and the fireman and brakemen, and even the conductor, in cases of danger to property or life from obstructions appearing upon the track, were subject to his orders in his efforts to avoid them. He was not only in the execution of his duties while passing over the road when the plaintiff was injured, but during the entire trip, and until he had made his report of the same to Inslee, and of the circumstances of the accident which had occurred. It required less than 16 minutes to run from the place of the accident to Port Huron, and less than 50 minutes to make the run and his report to Inslee. He was in the proper discharge of his duty all this time, having the injured boy on the train until he arrived at Port Huron, and what he did and said in the discharge of that duty, if no more than was required, I think should be regarded as proper evidence against the company, so far as it had any materiality to the case. It was the statements thus made to Inslee concerning the accident, and the defendant's agency in causing the injury, upon which the plaintiff had most to rely. How far the statements of the agent are binding upon and competent to be given against the company, and to what extent they are part of the *res gestæ*, depend upon the circumstances of each particular case, and I think the testimony of Inslee, giving the statements of the engineer at Port Huron, was properly received.

The defendant's second proposition is that the company was not required to fence its right of way to protect this child from coming upon its track, and was guilty of no neglect in this respect. The second, fourteenth, twenty-

first, and thirty-sixth assignments of error relate to this subject. Objection was made to plaintiff's testimony showing that the defendant's road was not fenced, as immaterial, and to the refusal of the request to charge that—

" The defendant is not required to fence its road at common law, and under our statute it is only compelled to do so to prevent cattle or other animals from getting on its road."

Defendant also requested the court to charge that—

" If the jury believed that a fence constructed of boards and posts four and one-half feet high, with the usual openings in such fences, would not have prevented the plaintiff from getting onto the defendant's track, then no fault can be attached to the defendant by reason of its neglect to build the fence, and no damage should be assessed against it in consequence of such neglect."

No error was committed in refusing to give the first of these requests, and the substance of the second was given.

The following charge upon this subject given by the court was also excepted to:

" And if you are satisfied from the evidence that by reason of or on account of its failure to so erect and maintain such fence at the point where you may conclude it is reasonable to infer that the child went upon the track, and if you are convinced from the evidence that the plaintiff got upon the track at the time he was hurt on account of the fence not being there, in other words, that he would not have done so if such fence had existed to impede his progress, and, furthermore, if you believe that he got upon the track without fault on the part of those who should be held accountable for his care and custody, in consequence of the neglect of the railroad company, as above stated, to erect and maintain the requisite fence, you would be warranted in finding that there was such negligence on the part of the defendant in this particular as would afford the plaintiff a remedy for the injuries received by him."

I think this a correct statement of the law as heretofore held by this Court. See this case in 56 Mich. 559; *Marcott v. Marquette, H. & O. R. R. Co.*, 47 Il. 9; 49 Id. 99.

The statute requires the defendant to fence its road with a

fence "sufficient to prevent cattle or other animals from getting on such railroad." This clause quoted is only descriptive of the sufficiency of the structure to furnish the required protection. The duty of the company in this respect is a positive one. The public, as well as the company, are entitled to the benefit and protection it affords against the perils and dangers incident to the use made of the road, and it would be strange reasoning, indeed, that would give to the citizen living along the line of these roads this barrier against danger of injury to "his cattle and other animals," and deny it to his infant children who are not yet old enough to enable them to comprehend such perils and dangers. The Legislature never intended any such limitation upon the protection to be furnished by the fencing required by the statute, and no decision of any court giving the statute such a construction can receive my approval.

I know it is said it is the duty of the parent or guardian of such children to restrain them from going into such dangers, but the experience of any man acquainted with the large families of the poor in this country is that at best this duty can be only imperfectly performed by the parents, and that it is not unfrequently the case that these little ones are seen wandering from the immediate care of the mother, whose domestic affairs absolutely preclude her at times from being with her children; and the present would seem to be one of those cases; and, if accidental injury overtakes them, it is a misfortune, but not negligence on her part. Negligence assumes ability to do otherwise, and better. She is at least entitled to the aid the law gives her. The testimony received showing the defendant had omitted to fence its road was properly admitted.

The defendant's third proposition relates to cattle-guards, and the fact that there was none at the Keyser crossing. I find nothing in the testimony relating to them on the part of the plaintiff, and it does not appear that anything was

claimed for them on either side. The requests upon that subject were therefore unnecessary, and no error was committed in refusing to give them.

I do not think the Keyser road was in any sense a public highway, but an old lumberman's road used for private purposes, and, being unfenced, was frequently used by the neighbors, and the defendant's requests relating thereto were not supported by the testimony upon that subject, and were properly refused by the court. The defendant's fourth proposition is therefore untenable.

The fifth proposition relates to the child's sufferings and ailments, and includes the fifth, sixth, seventh, eighth, and ninth assignments of error. The fifth assignment is upon the following question put to Mina Keyser:

"*Q.* What trouble did he have about his kidneys and water?

"*A.* He could not make water, and then he swells and bloats up. I did not know if he is ruptured or not; the doctors can't tell. When he was swollen up he was in pain. He had fits also. He had them after he was hurt. I don't know exactly how many times,—all the time; every three months, two or three months; and the longest six months. He did not, at any time before his injury, have any fits, nor any other difficulty, nor about his kidneys, or making water. He had the last attack of fits, I guess, last October."

The ground of the objection to this question was "that matter was not covered by the declaration." Mrs. Keyser was the mother of the plaintiff, and knew of his ailments. The testimony was admissible. *Johnson v. McKee*, 27 Mich. 473. It was competent for her to make the answer she did. They were facts within her knowledge.

The sixth assignment is the objection taken to the following question propounded to witness Mary Schoulty relating to the boy's mind after receiving the injury:

" Q. From what you have seen of him at those times, and other times, in your opinion do you believe he is a boy that is bright and sound in his mind?

" A. Well, I can't exactly tell. Sometimes he appears to be bright, and at other times he don't seem to be as bright as other children of his age."

The ground of objection to the question relied upon was "incompetency and immateriality," and witness "does not show such knowledge as would entitle her to give her opinion." There is force in this objection, and the exception would have to be sustained but for the fact that the answer is confined to the appearance of the child, and is harmless. The witness had shown no knowledge of the child before the injury, and but little familiarity with him after he was taken to Port Huron. The answer, however, relieves the question of any mischievous tendency.

.The seventh assignment relates to an objection on the ground of inadmissibility under the declaration to the following question propounded to Amanda Baker:

" Q. You recollect seeing him at any time in a fit?

" A. Yes, sir. In the morning, when my folks was to work, I saw somebody pass through the yard. I opened the door, and saw Mrs. Keyser had the little boy on her arm, and was crying, and telling me she thought her boy was dead, and I followed her home; and the boy was cold, and I heated water, and put his feet in warm water, and I put mustard on his feet. I seen he had fits. And Mr. Keyser called the doctor. I did not count how many fits he had. When Dr. Northrup came, I went home. He had more than one fit while I was there."

I do not think the question objectionable upon the ground stated. The proof tended to show that the child was well and healthy before the injury, and that very soon thereafter he frequently had spasms, which the witness described as fits, and which according to the medical testimony might be reasonably attributed to the injury caused by the defendant's engine. In using the term " fits " the witness did no more than describe certain physical manifestations she observed indicating great suffering, and with which she was familiar, and in her answer gave the child's appearance. While the

testimony showed that the ailment referred to was not the necessary consequence of the injury, it did show that it was regarded as a natural consequence, and this was sufficient to bring the proof within that portion of the declaration alleging the injury, and its character and extent, and which is as follows:

"The defendant carelessly and negligently ran its engine and train upon the plaintiff with great force and violence, and threw him from the track aforesaid upon the ground, by means whereof the legs of the plaintiff were broken, and his arms were also broken and dislocated, and his body and head were greatly bruised, broken, and injured, and he was otherwise greatly hurt and wounded; and thereby was obliged to and remained from that time hitherto in a sick, sore, wounded, bruised, and injured condition, so that he is maimed and injured for life. During all which time the plaintiff suffered, and continues to suffer, great pain, and was hindered and prevented from transacting and attending to any business and affairs, and will so remain during his life; and lost and was thereby deprived of divers great gains and profits which he might and otherwise would have made and acquired, and was put to great expense, and did lay out divers large sums of money, amounting to one thousand dollars, in and about to be cured of said injuries so received as aforesaid, and other wrongs then and there received from the said defendant, to the damage of plaintiff twenty thousand dollars."

It was said by Justice CAMPBELL in *Johnson v. McKee*, 27 Mich. 472, under a declaration containing substantially the same averments as the one in the present case:

"When the defendant was informed that damages were sought for sickness and disorder, and their attendant expenses, as well as for wounds and bruises, he was bound to expect evidence of any sickness the origin or aggravation of which could be traced to the act complained of."

This doctrine applies with equal propriety to the case before us.

The eighth assignment relates to the following question found in the testimony of Amanda Baker:

"In your opinion, is he [meaning the child] an ordinary, bright child?"

Incompetency and immateriality were the grounds of the objection. It was claimed that the injury to the boy had the effect to impair his mental fr *ulties. It was claimed that before the injury he was strong and healthy, and a smart, intelligent little child, and evidence was given tending to show that such was the fact, and that there was a marked difference in his physical and mental condition after the injury; that before he was hurt he was at least an ordinarily bright child. The witness was well acquainted with him after the injury, and it is not claimed the witness was not sufficiently intelligent to speak upon the subject. I have no doubt but the question was both competent and material, and her answer shows she gave her testimony with caution. Her response was, "He is not as bright as the rest."

The ninth assignment is based upon the following question put to Henry Baker:

"*Q*. From what you have seen of him and talked with him, what is your opinion as to whether he is a bright boy or foolish?

"*A*. He is foolish. That is what he looks to me."

This was competent for the same reason as was the question to Amanda Baker.

It is insisted, under the defendant's sixth proposition, that the inquiry of plaintiff's counsel in reference to the child's condition was extended beyond all reasonable limits, and they rely upon the tenth assignment of error upon this subject. The question put to Dr. Northrup is made the subject of this assignment, and which is as follows:

"*Q*. When you got there, what condition did you find the child in?

"*A*. I found him in a convulsion."

The child was injured in July, 1880, and the doctor was called to treat him in October, 1885. The objection was that

the doctor's visit was too remote from the accident to be material. The testimony tended to show that the malady brought upon the boy by the injury continued to the time of the trial, and there was some testimony to the effect that it was permanent. Under these circumstances the testimony was not objectionable upon the ground stated. The other testimony deemed objectionable by counsel, and referred to in this proposition, was not objected to, and therefore cannot be considered.

The seventh proposition relates to the care required of the defendant, and the speed of the train. The claim of counsel for defendant, under this head, will be found in the twenty-second, twenty-third, twenty-fourth, and twenty-fifth assignments of error, based on the refusal of the court to give defendant's ninth, tenth, eleventh, and twelfth requests, as follows:

" 9. If the jury find that the defendant company was organized in April, 1880, and only had possession of its road for a few months, and that at the point where the plaintiff was injured, and for over one-half a mile east and west thereof, there was no clearings, houses, or people, and if the defendant had no reason to believe that children would come upon its track, or were in the vicinity of its track, at that point, then the defendant cannot be held to any extraordinary degree of care to avoid the plaintiff, whose presence upon its track there was no reason to expect; and if the defendant exercised ordinary care in the management of its train, and used every possible effort to prevent the accident after the plaintiff was discovered, then defendant is not liable unless the jury believe that the existence of a fence would have prevented the plaintiff from coming upon its track.

" 10. There has been no competent evidence given on the trial of this case tending to show that the defendant ran its train at too high a rate of speed, or that it failed to keep a proper lookout as set forth in the first count of the plaintiff's declaration.

" 11. An object lying between the ties, and not appearing more than two or three inches above the ties, and not as high as the top of the rails, is not ordinarily an object indicating danger, nor would it of itself be of a character calling for

increased vigilance on the part of the trainmen, as it was not an apparent obstruction, but one that would in all reasonable probability be passed over; and, if it did not appear to be an object of danger, then it would not require the engineer to slow down the speed of his engine; nor would he be required to slow down such speed of his engine; nor would he be required to slow down such speed until he discovered that it would probably endanger the train or passengers, or would, if a human being, be itself in danger.

"12. If the jury believe that the child was lying between the.ties, so that the engineer could not see it was a living object, or large enough to require him to stop his train, until he came so near that he could not stop when it rose up, and if he then did all in his power to avert danger, and had previously, at Kimball's crossing,. blown the whistle and rung the bell, as the law requires, then there is no ground of recovery, because there was negligence on the part of his parents contributing to the injury, and the neglect to construct a fence cannot overcome such contributory negligence, and the defendant is entitled to recover."

In the ninth request the court is asked to instruct the jury to find the existence of a fact of which there is no testimony in the case, viz., that "the defendant company was organized in April, 1880, and only had possession of its road a few months," and was properly refused. But for this fault the request should have been given.

The tenth request asks the court to pass upon facts which were only proper for the jury under a proper charge as to the law. It is the duty of the defendant to keep its track absolutely clear from all obstructions, and the sides of its road fenced as required by statute. When it has done this, ordinary care on the part of the engineer in discovering apparent obstructions upon the track is all that the law should require; but when the road is unfenced, and no barriers exist against animals, or to prevent children, who have no knowledge of danger, from going on the track, and an object is discovered upon the road a half mile ahead, then appearing no more than two or three inches above the track, which does not belong there, and its character is unknown to the engineer, I

think ordinary care and prudence for safety to human life requires that he should reduce the speed of his train to such an extent that he can stop, if necessary, before reaching it, and not take the chances of probability that the object discovered is not a human being because not expected upon the track at that point. Persons not connected with the road are not expected to use the track in any case or at any place except at crossings; and when any one does, and he is discovered by the engineer of an approaching engine, increased vigilance is required upon his part in discovering whether or not the trespasser is sensible of the perils likely to overtake him, and act with that care and prudence which may become necessary to protect the intruder from injury. It is true, this care may be inconvenient, and cause some delays to both defendant and its passengers, but such considerations sink into insignificance, and cannot be placed in the scale against the importance and value of human life to the person, the family, and the country. We cannot depart from our view taken upon this subject when this case was here before.

The defendant's eleventh request does not include the necessary degree of caution required on the part of the defendant under the circumstances of this case, and was therefore properly refused; and the twelfth request has the same infirmity, and for the same reason was properly rejected.

The question of negligence of the parents is the subject of defendant's eighth proposition, and is contained in the thirteenth and fourteenth requests. These requests ask the court substantially to pass upon the negligence of the parents in caring for the child. This was a question, if it could be considered at all, within the province of the jury, so long as the parties disagreed upon that subject, and I think the charge is full and unexceptionable upon that point so far as the rights of defendant are concerned.

The court instructed the jury as follows:

" The question as to whether or not the mother of the

plaintiff, in whose charge he was prior to the time of the accident, was guilty of negligence in permitting him to escape from the house and stray upon defendant's track, is a matter to be determined by you from the evidence that has been submitted to you on this subject. If the mother of the plaintiff failed to exercise that usual and ordinary care and prudence which a parent under like circumstances is accustomed to use, and if the plaintiff in consequence of such carelessness on her part, wandered upon the track, and lay down between the rails, and was not observed by the engineer in charge of the train in time to prevent injuring him, provided the engineer kept a vigilant lookout and was not guilty of negligence, the defendant would not be liable. Whether it would be negligence upon the part of a parent to leave the plaintiff in a house without the guardianship of any person who, in your judgment, had arrived at the age of discretion, suitable to exercise such care for him, the door of which house he could open, and from which there was a road that he might follow leading to the defendant's track, are questions for your consideration.

"If the mother left her children without any one of suitable age to attend to them, and went off into the woods in search of berries, and was gone for a considerable period of time engaged in such pursuit, or if she left them so unattended, and went out into the garden to work among her vegetables, and was away from them for any unwarranted period without inquiring as to their whereabouts, from such facts you would be warranted in inferring that she did not exercise such care in this regard as persons of ordinary prudence are wont to use under like circumstances; but if she went out, as claimed by her, for the purpose of obtaining a few vegetables for dinner, and with the expectation of being gone but a short time, and was only absent a little while, and you believe that the child slipped out of the house without her fault, and was followed presently by her, and that she used the same care and caution that mothers, under like circumstances, are accustomed to use in taking care of and looking after their children, then you would be justified in concluding that there was no negligence on her part contributing to the injury."

The ninth proposition relates to the duty of the engineer to slow down his train on making discovery of an object of danger appearing upon the track, and is included in the thirty-fourth and thirty-fifth assignments of error. The

instructions given in these exceptions were properly guarded, and not erroneous. What has been said sufficiently disposes of this subject. Neither do I find any error in the thirty-sixth and thirty-seventh assignments. These clauses of the charge excepted to are quite as favorable to the defendant as its counsel had a right to expect. The first was in substance asked for by counsel for defendant in their eighth request.

The verdict in this case is large; and, whatever we may think of its correctness, as no error of law appears upon the record, we are powerless to relieve against it, and the judgment must be affirmed.

MORSE, J. I agree in the opinion that this case should be affirmed; but I also think that the negligence of the parents cannot affect the recovery in behalf of the child. See *Battishill v. Humphreys*, 64 Mich. 494.

CHAMPLIN, J. I concur in the result.

CAMPBELL, C. J. I think the hearsay testimony was improper; but, as the case will be affirmed, I do not think it necessary to discuss it at length.