JOHN G. LINDERBERG, RESPONDENT, *v.* CRESCENT MINING COMPANY, APPELLANT.

PRINCIPAL AND AGENT.—ADMISSION OF AGENT.—RES GESTÆ.—An admission made by an agent of the defendant twenty-five minutes after an accident and. at a distance of three miles from the place of the accident, and after a team had been hitched up and plaintiff had been carried out of the mine and taken by the team the distance of three miles, and there carried into a hotel and laid upon the floor, where the admission is that of an employé made in answer to a question from the foreman of the mine, is admissible against the defendant, the employer, because it is part of the *res gestæ.*

EVIDENCE.—CHANGE AFTER ACCIDENT.—NEGLIGENCE.—Where there was some evidence to show that an accident in a mine, and personal injury to a plaintiff, was caused by blasting in a tunnel adjacent to place where the accident occurred, which place was insufficiently timbered, it is not error to admit evidence to show how long it took to complete the tunnel to the place where the accident occurred in order to show what was the situation at the time.

NEGLIGENCE.— MASTER AND SERVANT.— DEFECTIVE TIMBERING IN MINE. — Where there is evidence to show that a certain place in a mine was defectively timbered and that plaintiff was ordered to go into the place by defendant's foreman—but that he had no knowledge of the locality, and that certain blasting was done without giving warning which caused dirt to fall through the timbers in the mine, upon the plaintiff; *held*, that a finding of negligence on the part of the defendant, the owner of the mine, was warranted by the evidence.

APPEAL from a judgment of the district court of the third district and from an order refusing a new trial, Hon. Thomas J. Anderson, judge. The opinion states the facts.

*Messrs. Zane and Putnam,* for the appellant.

The testimony of the making of the station and the

drifting back from the manway to the tunnel was incompetent even though it tended to show what was the situation after the accident. *Railroad Co.* v. *Hawthorne*, 144 U. S. 202; *Corcoran* v. *Peekskill*, 108 N. Y. 151; *Alcorn* v. *Railway Co.*, 16 S. W. Rep. 229; *Railway Co.* v. *Jones*, 14 S. W. Rep. 309; *Railway Co.* v. *Compton*, 75 Tex. 667; *Hodge* v. *Percival*, 132 Ill. 53; *Lang* v. *Sawyer*, 44 N. W. Rep. 1095; *Hudson* v. *Railroad Co.*, 59 Iowa, 581; *Nalley* v. *Carpet Co.*, 51 Conn. 524; *Railroad Co.* v. *Clem*, 123 Ind. 15; *Railway Co.* v. *Weaver*, 35 Kan. 412.

The admission or declaration of the miner as to the cause of the accident was clearly incompetent, because not a part of the *res gestæ*. *Forwarding Co.* v. *Insurance Co.*, 29 Pac. Rep. 826, 8 Utah, 41, in the Supreme Court of Utah; *Railroad Co.* v. *O'Brien*, 119 U. S. 99; *Packet Co.* v. *Clough*, 20 Wall. 528; *Railroad Co.* v. *Hawk*, 72 Ala. 112; *Sullivan* v. *Railroad Co.*, 12 Ore. 392; *Tennis* v. *Railway Co.*, (Kan.) 25 Pac. Rep. 876; *Hawker* v. *Railway Co.*, 15 W. Va. 628; *Adams* v. *Railway Co.*, 74 Mo. 553; *Railway Co.* v. *Hunter*, 33 Ind. 335; *Luby* v. *Railway Co.*, 17 N. Y. 131; *Field* v. *State*, 57 Miss. 474; *Durkee* v. *Railroad Co.*, 69 Cal. 533; *Waldele* v. *Railway Co.*, 95 N. Y. 274; *Aldridge* v. *Furnace Co.*, 78 Mo. 559. The fact that the statement was made by a laborer to the superior officer, even in the nature of a report, makes no difference. *Carrol* v. *Railroad Co.*, 82 Ga. 452. The case of *Keysor* v. *Railroad Co.*, 66 Mich. 390, decides nothing, for even the reporter of the court could not discover what the opinion meant.

*Messrs. Brown and Henderson,* for the respondent.

BARTCH, J.:

In this case the plaintiff seeks to recover damages for personal injury received while in the employ of the defend-

ant company.  He claims that he was employed as a laborer
and carman; that, as such, it was no part of his duty to
go into the winzes, raises, or stopes; that the foreman of
the defendant ordered him to go into a raise, and clean out
some material, which he did; that the raise was insuffi-
ciently timbered, but he was not aware of its unsafe con-
dition, not having been acquainted with the locality; and
that, through the negligence of the defendant in having
the raise insufficiently timbered, and without fault of the
plaintiff, the ground above him caved and fell upon him,
knocking him down the manway, and broke his leg, which
was afterwards amputated, because of the injury.  The jury
returned a verdict in favor of the plaintiff, and assessed
his damages in the sum of $2,500.  The defendant regu-
larly appealed to this court.

It appears from the evidence that the plaintiff was em-
ployed by the defendant, in one of its tunnels, as a com-
mon laborer or carman; that in the tunnel in which the
plaintiff was employed, there was an upraise, which at the
time of the accident extended upward at an angle of about
75 degrees, the distance of about 150 feet, and was still
being extended; that the raise consisted of two compart-
ments, separated by a lumber partition, one of which com-
partments was used as a manway, and the other for shoot-
ing ore and waste material down to the tunnel level; that
it was the duty of the plaintiff to keep the chute clean
and load cars; that the raise was timbered with lagging of
half-round split timbers, running up and down, and on
the hanging wall it was put reasonably close together, but
on the foot wall the lagging was so placed as to only cover
about two-thirds of the surface; that, before the accident,
a miner in the chute ordered the plaintiff to come up the
manway to assist him in fixing the chute; that he hesitated,
and asked the foreman if he must go, whereupon the fore-
man directed him to go; that he then went up about 30

feet, and began to assist the miner, when some loose dirt came down, putting out his light, and a piece of rock struck him, knocking him off from the ladder, and, falling to the bottom of the manway, he received the injury complained of; that at this time the defendant was running a tunnel to connect with this upraise at a point above where the plaintiff and miner were at work, the face of the tunnel being within 20 feet, and so near that blasting might cause disturbance in the upraise; that no precaution had been taken to guard against this, and the plaintiff was not aware of the approach of the tunnel, nor of any unsafe condition of the lagging in the upraise; that the accident happened about the time the miners quit work; that it is usual for them to put in blasts just before quitting time; and that plaintiff is a man of quite limited knowledge and understanding.

A part of the plaintiff's testimony at the trial, as disclosed by the abstract, is as follows: "It was just about quitting time; men coming off the shift. The boss said, 'What did you shoot before time for?' One miner spoke up and said, 'We didn't shoot before time.' This was a few minutes after the accident. Then they put me in a sleigh, and took me down to Park City. They took me to the hotel, and laid me on the office floor. The foreman came in, and said, 'How did this happen?' The miner who went with me said, 'Rock came down the raise, and struck him.' This conversation took place when I got to Park City; within 25 minutes, I guess. It is three miles, I think, there the short way." That part of the conversation which occurred at Park City was admitted, over the objection of counsel for the appellant that it was not a part of the *res gestæ*. Other evidence tends to show that it was 45 minutes after the accident occurred when this conversation took place.

Counsel for appellant insist that this evidence was in-

competent and immaterial. It was the duty of the defendant to use reasonable care and prudence in timbering and working its mine, and, if it failed to do its duty in this respect, then it must be held liable for injury to its employés. If the upraise was so timbered as to allow rock and other material to fall through the lagging, and down the manway, then the evidence complained of would have a tendency to show that fact, and also a want of due care and prudence on the part of the defendant, and would be material.

To entitle the declaration of an employé to admission as evidence against his employer, they must be so connected, as to time and circumstances, as to form a part of the main fact over which the controversy has arisen, and to preclude the probability of design on the part of the person making them. No rule has yet been established defining the precise length of time within which such declarations must be made after the accident to become a part of the *res gestæ*. If they were to be excluded because of not being exactly contemporaneous with the main fact, few cases of accidents would arise in which they would be admitted; for, in such cases, the declarations, which illustrate the cause and manner of the happening of the accident, are nearly always made after it has happened. That the happening of the accident and the declaration must be directly connected is evident. The declaration must have been caused by and grown out of the fact, but the lapse of time that may intervene, and still make the declaration a part of the *res gestæ* will always be a matter of consideration in this class of cases. It must always depend on the circumstances of each particular case. A declaration may be made immediately upon the happening of an accident, and yet in such manner and under such circumstances as to exclude it; as where it is made by an employé to a person who is a stranger to the business of the

employer, and in no relation with him, or it may be made a considerable time after the main fact, and yet be so connected with it and made under such circumstances as to form a part of it, and then it will be admissible.

In *Luby* v. *Railroad Co.*, 17 N. Y. 131, a horse car was run against the plaintiff, and she was injured. The car having been stopped, a policeman arrested the driver, and on the trial the policeman was permitted to testify, under exception of defendant, that upon arresting the driver, as he was getting off the car, he asked him why he did not stop the car, to which the driver replied that the brake was out of order. It will be observed that this statement was made to one who was a stranger to the defendant's business, probably to excuse his own neglect, and, although it was made immediately after the accident had occurred, the court, holding the admission of this testimony to be error, said: "But the fact, if true, could not be proved in this manner. The declaration was no part of the driver's act for which the defendants were sued. It was not made at the time of the act, so as to give it quality and character. The alleged wrong was complete, and the driver, when he made the statement, was only endeavoring to account for what he had done. He was manifestly excusing himself, and throwing the blame on his principals." In the case of *Harriman* v. *Stowe*, 57 Mo. 93, the plaintiff, Mrs. Harriman, fell through a trapdoor, negligently constructed by the defendant, and was injured. At the trial, her attending physician was allowed to testify, under exception of defendant, to a statement that she made to him from one to four hours after the principal fact, to the effect that the trapdoor in the kitchen had been left insecure, and that she stepped on it, and fell through. The court, in holding this evidence admissible, said: "The accident and the declaration formed connecting circumstances, and, in the ordinary affairs of life, no one would doubt the truth of

these declarations, or hesitate to credit them as evidence. I can perceive no valid objection to their admissibility."

In the present case the declaration was made by an employé to his foreman. This was in the line of his duty. He had been with the plaintiff from the time he was hurt until he arrived at Park City, where he was asked by his superior how the accident happened. The foreman had a right to know, and, while the declaration and the accident were not exactly contemporaneous, yet the circumstances were such as to closely connect them. The statement of the employé grew out of the main fact,—the accident,— and appears to have been made under circumstances which preclude the idea of design to misrepresent. We are of the opinion that it formed a part of the *res gestæ*, and was admissible. *Insurance Co.* v. *Mosley*, 8 Wall. 397; *Com.* v. *McPike*, 3 Cush. 181; *Keyser* v. *Railway Co.*, 66 Mich. 390, 33 N. W. Rep. 867; *O'Connor* v. *Railway Co.*, 27 Minn. 166, 6 N. W. Rep. 481; *Hermes* v. *Railroad Co.*, 80 Wis. 590, 50 N. W. Rep. 584; *Railroad Co.* v. *Coyle*, 55 Pa. St. 396.

At the trial the plaintiff was allowed to prove, under exception of defendant, the length of time which was required, immediately after the accident, to complete a tunnel, and connect it with the upraise, the same being the tunnel in which it was claimed that blasting was done at the time of the accident, and the surface of the upraise thereby disturbed. Counsel for defendant insist that this evidence was not admissible, because it had no legitimate tendency to show that the defendant had been negligent before the accident. It does not appear that it was offered for that purpose. One theory of the plaintiff was that the blasting in the face of the tunnel disturbed the surface of the upraise, and caused the material which struck plaintiff to fall down the manway. It had been proved that the face of the tunnel was within 20 feet of the upraise at

the time of the accident, and the plaintiff sought to show that it was closer than that by offering the testimony referred to, and proving how much progress was made each day, and how many days were required to make the connection. This evidence tended to show the condition of things as they were at the time of the accident, from which the jury were to infer as to whether or not there was negligence on the part of the defendant. The question of negligence appears to have been based upon the state of things as they then existed, and for that purpose the evidence was properly admitted. *Norris* v. *Steamship Co.*, 37 Fed. Rep. 427; *Railway Co.* v. *Weaver*, 35 Kan. 412, 11 Pac. Rep. 408; *McKee* v. *Bidwell*, 74 Pa. St. 218.

At the close of plaintiff's testimony, defendant's counsel moved the court for a non-suit, on the ground that no negligence on the part of the defendant had been shown. At this stage of the trial it was apparent from the evidence that a considerable amount of material had come down the manway, causing the accident, and that, if proper precaution had been taken, it could have been prevented. It was shown that the foreman ordered him to go up into the upraise, against his will, to assist the miner, where he was not accustomed to work, when it was no part of his duty, and that he was not aware that the men were working in the tunnel. The foreman was aware of the fact that the place was unsafe for a person who was unaccustomed to work there, and the conversation between the foreman and the miner, coming down from the tunnel, would also indicate that some blasting had been done without giving warning, which had probably caused the disturbance in the upraise, and started the material to fall. While it must be held the plaintiff assumed the ordinary risks incident to his employment, yet it was the duty of the defendant to furnish him a reasonably safe place and reasonably safe appliances, and not to expose him to danger

through carelessness.   We think the evidence of the plaintiff was sufficient to raise a presumption of negligence, and the motion was properly overruled.   1 Shear. & R. Neg. § 58; *Reddon* v. *Railroad Co.*, 5 Utah, 344, 15 Pac. Rep. 262.

The evidence in this case is conflicting, and there are numerous errors assigned in regard to the rulings of the trial court, but we think the record does not show sufficient grounds upon which to disturb the verdict.   The judgment is affirmed.

MINER, J., concurred.