FIRST NAT. BANK OF CANTON, Appellant, *v.* NORTH, Respondent.

**1. Principal and Agent — Evidence — Declarations.**

The declarations of an agent, to bind his principal, must be made at the very time he is doing the act he is authorized to do, and must be concerning the act he is then doing. The rank of the agent can make no difference in the application of this rule.

**2. Same — Appeal — Prejudicial Error.**

On an issue that a chattel mortgage was fraudulent as against the creditors of the mortgagor (for the purpose of showing intent) the court admitted statements of the president of the mortgagee, made three days after the execution of the mortgage, at a time when an inventory of the chattels was being taken, to the effect that he marked the goods low "so parties would not attach." *Held,* inadmissible, and prejudicial error.

**3. Costs, Right to, on Appeal — What Recoverable.**

Under § 1, sub. 3, chap. 11, L. 1883; Comp. L., § 5187, allowing the prevailing party costs "for making and serving a case * * containing exceptions," *held*, that such party was entitled to this allowance in the supreme court, where he had made a motion for a new trial in the court below, "on the minutes," and to review the motion he prepared and served a bill of exceptions.

**4. Same — Stenographer's Fees.**

In such case the fees paid the stenographer for a transcript of the proceeding from which to prepare the bill is taxable under § 4, chap. 52, L. 1879; Comp. L., § 484, providing that stenographer's fees for transcripts, "shall be taxable costs."

(Argued May 8, 1888; reversed May 25; opinion filed February 11, 1889.)

APPEAL from the district court, Lincoln county; Hon. C. S. PALMER, Judge.

*L. S. Swezey* and *R. B. Tripp,* for appellant.

In permitting the statements of Mr. Gale, made after the exe-

cution of the mortgage, to go to the jury, the court erred. No subsequent act or statement of an agent of the plaintiff was admissible to show what the intention of the parties was when the mortgage was executed. Goetz v. Bank, 119 U. S. 551, 7 Sup. Ct. Rep. 318; Packet Co. v. Clough, 20 Wall. 528; Insurance Co. v. Mahone, 21 Wall. 152–157; First Nat. Bank v. Ocean Nat. Bank, 60 N. Y. 278; Franklin Bank v. Stewart, 37 Me. 519; Baldwin v. Doubleday, 8 Atl. Rep. 576; Edwards v. Cartis, 9 Pac. Rep. 793, 794; Clunie v. Sacramento L. Co., 7 Pac. Rep. 708; Randall v. N. W. T. Co., 11 N. W. Rep. 419; Am. S. Co. v. Landreth, 102 Pa. St. 131; C., B. & Q. R. R. Co. v. Riddle, 60 Ill. 534; Story, Ag., § 135; Vicksburg & M. R. Co. v. O'Brien, 119 U. S. 99, 7 Sup. Ct. Rep. 118; Sterling v. Buckingham, 46 Conn. 461–464; Dodge v. Childs, 16 Pac. Rep. 815, 816; Lane v. Bryant, 9 Gray, 245.

That the position the agent holds does not affect the rule, see Randall v. N. W. T. Co., 60 N. Y., *supra.*

It may be argued the declarations were admissible as a part of the *res gestæ* (the taking of the inventory), but this was not the purpose of the offer; it was to show the intent. Further, the statements were made on "two different occasions," without relationship to the invoice. Again, there was no issue with reference to any thing connected with the inventory of the goods, or the value thereof.

The evidence was inadmissible. A verdict has been rendered against the appellant. The presumption is, there was injury. In such cases, where the appellate court cannot say beyond a reasonable doubt the jury were not influenced by the testimony, it will reverse. Under the issue in the case, the statement of the defendant of his purpose of the proof, and the character of the statements adduced, we believe no argument is required to show the injury. On this point see, also, Vicksburg, etc., v. O'Brien, *supra.*

*C. B. Kennedy,* for respondent.

The real transaction entered into between the parties at the time the mortgage was made was not expressed by it. The mortgage was only a cover to it,— the covering up of the greater part of the

goods by mortgage for the benefit of the Deans, as a shield and cover to ward off creditors.. The *res gestœ* of the real transaction covered every thing that was said or done with reference to these goods until the divisions provided for were made, because the divisions were a part of the agreement, and come within the rule in Packet Co. v. Clough, 20 Wall. 528. If it was proper to show the division and inventory of these goods, it would, under that rule, be proper to show the admissions and declarations made, accompanying the inventory. These declarations of Gale are not statements as to what took place at the time the mortgage was made, but statements made with reference to the very act he was performing for the bank. We do not question the rule of law contended for. These declarations do not come within the rule. The defendant was inquiring as to the value of the goods, which was a proper inquiry. The witness Dean had assisted in making an inventory, and by direction of Gale, acting for the bank, was directed to put them down far below their cost. It was proper to show this to show that the inventory made was no proper evidence of their value. This was an issue of fraud, and in such case the evidence may embrace all the facts and circumstances which go to make up the transaction, disclose its true character, and explain the actions and intent of the parties. 37 Mo. 102; Bigelow, Fraud, 477.

The agreement made by the Deans and Gale in the bank at the time the mortgage was made provided for the divisions and separations of these goods, and the invoicing of them to ascertain the amount to be taken out. The agreement being testified to, it was proper, as corroborative of it, to show the actual dealings with the goods were in accordance with its provisions. These statements, accompanying the very act he was performing for the bank, give it color, and showed that the inventory was not simply for the purpose of valuing the goods, but to keep off creditors.

TRIPP, C. J. This was an action for claim and delivery of certain goods and merchandise described in the complaint, brought by the plaintiff, as mortgagee, against the defendant, sheriff of Lincoln county, who had levied thereon under attachment against the property of M. B. Dean & Co. The defense was that

the plaintiff's mortgage was fraudulent and void as against the creditors of Dean & Co. The case was tried to a jury, and resulted in a verdict for the defendant, and from a judgment directing a return of the property the plaintiff appealed to this court.

No question was raised in the court below as to the *bona fides* of the debt from Dean & Co. to the bank, for which the mortgage was given, but it was contended that certain agreements were entered into between the bank and Dean & Co., at the time of giving the mortgage, whereby the mortgagors were to have their exemptions out of the mortgaged property, and were also to be permitted to withdraw sufficient of the goods to pay an indebtedness of $837 due to a brother of M. B. Dean, as a preferred creditor; so that, while the mortgage upon its face secured only the indebtedness of the bank, it was intended by the parties thereto to keep off other creditors, and to hinder and delay them in the collection of their debts. Frank Dean, a brother of M. B. Dean, was sworn and examined as a witness on the part of the defendant; and he having testified that several days after the execution of the mortgage, and after it was filed for record, he assisted in making an inventory of the goods described in the mortgage, and having testified as to the value of the goods, he further stated that Gale, president of the bank, was present, and objected to the valuation of the goods as being " too high." The witness was thereupon asked by defendant's counsel the following question : " *Question.* Did Gale say why he wanted it put down so low ? " The plaintiff objected to this question as irrelevant and immaterial, and upon the ground that the agent cannot bind the corporation by subsequent acts or declarations. The court then asked when this conversation occurred with reference to the giving of the mortgage; and the witness replied that " the mortgage was made Friday; we began invoicing Saturday night. This, Mr. Gale said on Monday morning." The court thereupon overruled the objection, and the witness answered : " He said on two different occasions to me that he done that so that parties would not attach."

It is difficult to see upon what theory the trial court permitted this evidence to go to the jury. The question before the court

was as to the value of the goods.   The witness' acquaintance
with the goods had been shown by proving that he had assisted
in making an invoice of them ; and, in reply to the objection of
plaintiff's counsel that testimony as to value was immaterial,
counsel for defendant replied to the court : " I wish to show the
*value of the goods* to show the *intent* of the parties in covering
up $4,000 worth of goods to secure a claim of $1,800."   And,
under pretense of showing *value*, he was permitted to show what
the plaintiff's agent did and said three days and more after the
giving of the mortgage, in reference to fixing a low value in the
invoice.   No principle is better settled than that the agent can-
not be permitted by subsequent acts or words to bind his prin-
cipal.   The principal is bound by the acts of his agent, done
while acting as agent, and within the scope of the agency, and
while so acting the language of the agent may be given to ex-
plain or qualify such acts as a part of the *res gestœ*.   No one
would be safe if the rule were to be enlarged or extended beyond
this limit.   Employers would be liable to be financially ruined
by unfriendly and unprincipled agents, if their declarations as to
past transactions were to stand like admissions of parties made
against interest.   The mere suggestion of the result proves the
rule.   Such declarations are the merest hearsay.   Such agent is
himself a competent witness, and may be called and examined as
a witness relative to matters within his knowledge ; but his dec-
larations not made under oath, nor at the time of the act given in
evidence, can never be used against his principal.   In Goetz v.
Bank, 119 U. S. 551, 7 Sup. Ct. Rep. 318, it was claimed that
the lower court erred in refusing to allow the plaintiff to prove
the subsequent declarations of the president of the defendant bank
tending to show bad faith on the part of the bank, which was one
of the issues of the case.   Justice FIELD, in sustaining the ruling
of the lower court in rejecting the evidence, says : " The testi-
mony was excluded, and rightly so.   The declarations had no
bearing upon the good faith of the officers of the bank in the trans-
actions in this case; and, if they had, being made some days after
those transactions, they were not admissible, as part of the *res
gestœ*, any more than if made by a stranger.   Evidence of declara-
tions of an agent as to past transactions of his principal are in-

admissible, as mere hearsay." This is a rule laid down by all these cases. Packet Co. v. Clough, 20 Wall. 528 ; Insurance Co. v. Mahone, 21 id. 152; Bank v. Bank, 60 N. Y. 278 ; Bank v. Steward, 37 Me. 519; Baldwin v. Doubleday (Vt.), 8 Atl. Rep. 576 ; Edmunds v. Curtis (Colo.), 9 Pac. Rep. 793 ; Clunie v. Lumber Co. (Cal.), 7 id. 708 ; Randall y. Telegraph Co. (Wis.), 11 N. W. Rep. 419 ; Steamship Co. v. Landreth, 102 Pa. St. 131; Railroad Co. v. Riddle, 60 Ill. 534. The line is tautly drawn in the case of Baldwin v. Doubleday, *supra*, in which the court says : " The declaration of an agent, to bind a principal, must be made *at the very time* he is doing an act he is authorized to do, and must be concerning the act he is then doing." In Edmunds v. Curtis, *supra*, the court says of such declarations : " They must be made not only during the continuance of the agency, but in regard to the transaction pending at the very time. They must accompany the transaction or the doing of the business. They are admissible only when made as to a business matter which is being transacted at the time."

There is no tendency of the courts to relax this well-established rule, as shown by the modern cases. The tendency is rather to limit, than to extend, the admissibility of such declarations. The courts have sometimes extended the doctrine of *res gestæ* so as to allow a declaration made so soon after the act in evidence as to leave no room to doubt that the declaration was honestly prompted by the act, so as to become a part of the transaction itself. Railroad Co. v. Coyle, 55 Pa. St. 396.

But the supreme court of the United States is not disposed to extend the rule even to this extent. In Railroad Co. v. O'Brien, 119 U. S. 99, 7 Sup. Ct. Rep. 118, an accident had occurred on the road. The engineer had just left his engine, and, viewing the result of the accident, said to a person standing by that the train at the time was running at the rate of eighteen miles an hour. The person to whom the remark was made was called as a witness at the trial, and testified that the remark was made immediately after the occurrence, not to exceed from ten to thirty minutes thereafter. The court below admitted the testimony as a part of the *res gestæ*, but the supreme court reversed the case ; and upon this point Justice HARLAN, in delivering the opinion of the court,

uses this pertinent language : " His. declaration, after the accident had become a completed fact, and when he was not performing the duties of engineer, that the train, at the moment the plaintiff was injured, was being run at the rate of eighteen miles an hour, was not explanatory of any thing in which he was then engaged. It did not accompany the act from which the injuries in question arose. It was, in its essence, the mere narration of a past occurrence not a part of 'the *res gestœ* — simply an assertion or representation, in the course of conversation, as to a matter not then pending, and in respect to which his authority as engineer had been fully exerted. It is not to be deemed part of the *res gestœ* simply because of the brief period intervening between the accident and the making of the declaration. The fact remains that the occurrence had ended when the declaration in question was made, and the engineer was not in the act of doing any thing that could possibly affect it. If his declaration had been made the next day after the accident, it would scarcely be claimed that it was admissible evidence against the company ; and yet the circumstance that it was made between ten and thirty minutes — an appreciable period of time — after the accident cannot, upon principle, make this case an exception to the general rule. If the contrary view should be maintained, it would follow that the declarations of the engineer, if favorable to the company, would have been admissible in its behalf, as part of the *res gestœ*, without calling him as a witness — a proposition that will find no support in the law of evidence. The cases have gone far enough in the admission of the subsequent declarations of agents as evidence against their principals." See, also, to the same effect, Lane v. Bryant, 9 Gray, 245 ; Dodge v. Childs, 16 Pac. Rep. 815. Nor does it matter what may be the rank of the agent. The president has no more power to bind the bank than has the cashier or teller, by his declarations as to past transactions. Randall v. Telegraph Co. (Wis.), 11 N. W. Rep. 419 ; Bank v. Bank, 60 N. Y. 278.

The defendant admits the correctness of the rule laid down by these decisions, but he says : " These declarations of Gale are not statements as to what took place at the time the mortgage was made, but a statement made in reference to the very act he was performing for the bank, to-wit, valuing and inventory-

ing the goods." It is undoubtedly true that "whatever the agent does in the lawful prosecution of the business intrusted to him will bind his principal;" and the rule as announced by Mr. Justice STORY, that "when the acts of the agent will bind the principal, there his representations, declarations, and admissions respecting the subject-matter will also bind him, if made at the same time, and constituting a part of the *res gestœ,*" is undoubtedly the correct one. But the premises of defendant's argument are at fault, for the acts of the agent Gale in and about which the declarations were claimed to have been made would have been as inadmissible as his declarations to prove that the prior mortgage was taken to defraud creditors. The agent had performed his duties as to the mortgage. He could neither by subsequent acts nor declarations be permitted to bind his principal, or in any manner affect the character of the work performed by him as agent. If it is true, as contended by defendant's counsel, that the declaration complained of had reference, not to the values fixed in the mortgage, but to the values fixed in the inventory, the result is the same; for the object and manifest effect of the declaration was to prove that because the agent, by fixing low values in a subsequent inventory, and by his admission made at that time, was then trying to prevent creditors from attaching, that such was his intention, and the intention of his principal, when the mortgage was made. Such evidence was not admissible. The intention might have been instantly formed by the agent, or conceived prior to the execution of the mortgage; but, in any event, the principal could be bound only by the intent of its agent, as manifested by his acts or declarations at the time of the execution of the mortgage itself. No subsequent isolated act, or declaration accompanying such act, could be offered to give color or effect to any act of the agent already performed and completed. Under no rule of evidence could the inventory about which the declaration is claimed to have been made, have been admitted to affect the mortgage already executed, if objected to. The ultimate fact offered to be proved was the value of the mortgaged property; and the proving of the fact that witness had, near the time of making the mortgage, assisted in making an inventory, could have no other purpose or relevancy than to show witness' knowledge of

the value of the property, and to assist in laying a foundation for his subsequent testimony as to what that value was. This declaration, instead of aiding, was rather calculated to destroy, the very foundation he was trying to lay. Again, upon defendant's own theory, the answer of the witness will not sustain defendant's argument. The witness says: " Gale said on *two different occasions* to me that he done that so parties would not attach." On both occasions the declaration could not have been of the *res gestæ* of the act. They were different occasions, and, so far as the answer discloses, neither occasion had reference to the act offered in evidence.

That the evidence may have been prejudicial to plaintiff is too plain for discussion. It was a declaration by the chief executive officer of the bank in reference to the very issue the jury were to try, and the charge of the court gave emphasis to this portion of the evidence, if there was not error in the instruction itself. The court said: " There was some evidence introduced here tending to show that this was a fraudulent transaction. If the evidence which has been introduced satisfies you that a fraud has been committed upon these creditors, Farwell & Co., with others, it is a fraud which was committed by Dean & Co. and the officers of the First National Bank. All this evidence you have the right to take into consideration in determining whether or not these instruments were executed for the purpose of defrauding creditors."

The court cannot say that the plaintiff was not prejudiced by the introduction of this evidence, and the judgment of the lower court must be reversed. All the justices concur.

REPORTER : — After the reversal of the judgment in this case the appellant served the respondent with a verified statement of its costs and disbursements on the appeal, together with a notice of the time and place of their adjustment before the clerk of the court. On the adjustment the clerk disallowed the two following items: " $7 for making and serving case, over 50 folios ; $40.90 stenographer's fees to effect appeal record." From this action of the clerk the appellant appealed to the court. On this appeal, in addition to the record of the court, there was the certificate of the clerk " that the item of $40.90 had been paid by the appellant to

the stenographer of the court below for a transcript of the proceedings. No question was made before me but that this item was a necessary expenditure, but it was contended that it was a cost of the court below, and not taxable here. The same was contended as to the item of $7." It appeared from the record that a motion for a new trial " on the minutes of the court " had been denied, and that after this the bill of exceptions on which the case was reviewed in this court was prepared, served and settled.

*R. B. Tripp*, for appellant.

These costs and disbursements were necessarily incurred in order that the questions raised might be examined here. That both were taxable, see § 1, sub. 3, chap. 11, L. 1883, C. L., § 5187; § 4, chap. 52, L. 1879, C. L., § 484; Schwalbach v. Chicago, M. & St. P. Ry. Co., 40 N. W. Rep. 579; Bradford v. Vinton, 27 id. 2; French v. Fitch, 35 id. 707; Flood v. More, 2 Abb. N. C. 91.

*C. B. Kennedy*, for respondent.

No brief on file.

By the COURT:

It is ordered and adjudged that the taxation of the costs in the above action by the clerk be and the same is hereby modified, and the items of $7 and $40.90 are hereby allowed in favor of the appellant in addition to the amount allowed by the clerk.