case; TEMPLETON, J., of the first judicial district, taking his place.

---

WILLIAM SHORT, Plaintiff and Respondent, *v*. NORTHERN PA-
CIFIC ELEVATOR COMPANY, Defendant and Appellant.

1.  **Agents' Admissions; When Not Binding on Principal.**

Plaintiff had grounds for suspicion that one M. had stolen a quantity of plaintiff's grain from his granary, and had subsequently delivered such grain to the defendant at its elevator, at La Moure, and within twenty-four hours after M. had actually delivered certain grain at said elevator, and received tickets therefor, plaintiff visited the .elevator at La Moure, and there saw L, engaged in buying grain for defendant, and issuing tickets for the same, and in receiving such grain into the defendant's elevator. Under these circumstances, and in response to inquiries made of L. by plaintiff, L. stated to plaintiff, in substance, that, several hours prior to the time of such conversation, L. had purchased of M., and given him defendant's elevator tickets therefor, a quantity of grain corresponding in kind and amount to that supposed to have been stolen from the plaintiff. *Held*, in an action against the defendant for the value of the grain, that said statements and admissions made by L. as to receiving the grain, and issuing tickets therefor, were inadmissible because not a part of the *res gestœ*, and their admission in evidence was error. The statements of L. were made concerning a transaction which was within the scope of L.'s authority as agent, but such transaction was closed, and entirely completed, some hours prior to the time at which L. narrated the facts to the plaintiff. The declarations and admissions of L. were not made while the wheat was being received into the elevator; nor were the declarations made spontaneously, and so connected with the principal transaction as to spring from and form a part thereof. Such declarations by the agent were not a necessary part of the duty intrusted to him, and cannot, therefore, bind the principal, in the absence of authority from the principal to make such declarations. Evidence examined, and found not to show that L. had authority from defendant to make the declarations and admissions which were admitted in evidence.

(Opinion Filed May 6, 1890.)

*A*PPEAL from district court, La Moure county; Hon. RODERICK ROSE, Judge.

This action was commenced in justice court in La Moure county in 1888, was tried *de novo* on appeal in district court of

La Moure county and was taken on appeal to supreme court of Dakota territory. Pending in that court when North Dakota was admitted, the case was transferred to this court.

Messrs. Thomas and Davis, for appellant, cited: First National Bank v. North, 41 N. W. Rep. 736; Dodge v. Childs, 16 Pac. Rep. 815; Vicksburg & M. R. Co. v. O'Brien, 119 U. S. 99; Stone v. N. W. S. Co., 36 N. W. Rep. 248; Tuthill S. Co. v. Shaver W. Co., 35 Fed. Rep. 644.

J. M. Bartholomew, (in whose place Messrs. Nickeus and Baldwin were substituted as attorneys for respondent,) in his brief filed in the territorial supreme court, cited: N. Y. & Col. M. Syn. Co. vs. Rogers, 16 Pac. Rep. 719; Williamson v. Ry. Co. 10 N. E. Rep. 790; Armil v. Ry. Co., 30 N. W. Rep. 42; State v. Jones, 64 Iowa 349; American Fur Co. v. U. S., 2 Pet. 358; Abbott's Trial Evidence, 44; Bank v. Stewart, 114 U. S. 224; Bank v. Fields, 2 Hill 445; McGinnis v. Adriatic Mills, 116 Mass. 177.

WALLIN, J.   The plaintiff sues the defendant to recover the value of 49 bushels and 50 pounds of No. 1 hard wheat which he alleges was stolen from him by one Gregg McCann on the 15th day of November, 1883, and thereafter delivered to the defendant; that the defendant mixed said wheat with its own grain, and converted the same to its own use.   The defendant's answer was a general denial.

At the trial, William Short, the plaintiff, testified in his own behalf as follows:   "A neighbor and myself went to my granary for a load of grain, and there saw wheat spilled on the ground, and that a good load had been taken out of the granary.   We saw a wagon track, which we followed up, and traced into the town of La Moure.   We tracked the wagon by the broken hoof of one of the horses.   Gregg McCann owned the horse.   We followed the track to McCann's place, and thence into the town of La Moure—a distance of fifteen miles in all.   Then, Mr. Lighthall, I ask him—   Defendant's Counsel.   We object to anything that Mr. Lighthall said.   Plaintiff's Counsel.   Question:   Who was Mr. Lighthall?   Answer.   The elevator man at La Moure.   Q.   You went to the elevator with this man you

have mentioned? A. Yes, sir. We found Mr. Lighthall there. He was buying and taking wheat for this elevator company. * * * Q. When you got to the elevator, did you see anybody exercising authority there, in purchasing and taking in grain, besides Mr. Lighthall? A. No, sir. Q. Did you speak to him about this grain? (Objected to by defendant on the ground that no authority on the part of Lighthall to speak for defendant has been shown; that his statements offered to be proved relate to a closed and past transaction, are hearsay, and incompetent. Objection overruled, and defendant duly excepted.) A. Yes, sir. Q. What did he say? (Defendant objected same as last above. Same ruling, and defendant excepted.) A. He said he had received grain from this McCann the night before—some time before; that he had received forty-nine bushels and fifty pounds. Q. Did you make a demand on him for wheat delivered by McCann? (Objected to by defendant as incompetent; that no authority on the part of Lighthall has been shown to entertain such a demand upon the defendant. Objection overruled, and defendant excepted.) A. I did afterwards. Q. Have you ever had any pay, or the wheat returned which is mentioned in the complaint? A. No, sir." On cross-examination witness stated that he traced the wagon track into town, and up to a point within ten rods of the defendant's elevator. Witness further stated: "I do not know what Mr. Lighthall's authority was as agent of the defendant. All that I know is what I saw him do. The only thing I saw him do was to receive wheat, and issue tickets for wheat received." It appeared that there was no other elevator at La Moure. This constitutes the substance of the evidence relative to points controverted in this court. Defendant offered no testimony. Both parties rested the case. The defendant thereupon moved the court to direct a verdict in favor of the defendant upon the grounds: "*First*, there is no competent evidence before the court or jury showing that the defendant ever received any wheat, the property of the plaintiff; *second*, that it is not shown that the plaintiff ever demanded this wheat from the defendant, or any authorized agent of the defendant, and, further, that it is not shown that defendant, upon due demand, refused to de-

liver this wheat." Motion denied and defendant duly excepted. A bill of exception was settled, and a motion for a new trial was denied whereupon judgment was entered for plaintiff, and defendant appealed. Among the errors assigned in this court are the following: (1) The court erred in admitting, against defendant's objection and exception, (a) evidence of the statements of one Lighthall that defendant had received a quantity of wheat from Gregg McCann; and (b) evidence of a demand of the wheat in question made upon said Lighthall. (2) The court erred in refusing to direct the jury to find in favor of defendant.

To recover in the action, it was necessary that the plaintiff should show, by evidence legally competent, that a certain quantity of wheat belonging to the plaintiff had been delivered to the defendant at its elevator in La Moure, and that upon demand therefor the defendant had failed to return the wheat, or account for its value. The only evidence in the case which was offered to establish the delivery of the wheat to defendant was certain statements and declarations testified to by the plaintiff as having been made by one Lighthall in a certain conversation between plaintiff and Lighthall had at defendant's elevator, and hereinbefore set out in the evidence. It does not appear distinctly from the testimony at what precise time the conversation in question was had with reference to the time when McCann delivered the wheat to Lighthall at the elevator, but it was had some hours subsequent to the close of the wheat transaction between McCann and Lighthall, and twenty-four hours after such wheat transaction with McCann was completed. It is important to inquire what relation Lighthall sustained to the defendant when he made the statements testified to by the plaintiff, and which are relied on by the plaintiff, to fix defendant's liability as a principal. The only evidence in the case shedding any light on this inquiry comes from the plaintiff, who testifies upon the point as follows: "I do not know what Mr. Lighthall's authority was as agent of the defendant. All I know is what I saw him him do. The only things I saw him do was to receive wheat and issue tickets for wheat received." Plaintiff further testifies that when he visited the elevator, and had the conversation referred to, Lighthall was then engaged in buying and taking in grain, and

that plaintiff at that time saw no other person exercising authority at the defendant's elevator.   It appears from the testimony that plaintiff, having ground for suspicion that one Gregg McCann had stolen a wagon load of grain from his granary, and sold it to defendant at its elevator in La Moure, went to the elevator and was then and there informed by Lighthall that he (Lighthall) had within the preceding twenty-four hours received of McCann a quantity of wheat, and had issued tickets to McCann for the same.   The admissions and declarations of Lighthall were received in evidence against the objections of the defendant, and the rulings of the trial court thereon were duly excepted to.   We think the rulings were erroneous, and that the defendant's motion, made after the testimony was closed, to direct a verdict for defendant, should have been granted.   See Bowman v. Eppinger, *ante* p. 21, (44 N. W. 1000,) and authorities cited.

It is elementary that a principal in a transaction may, by his admissions or confessions made at any time, either before or after the event, render himself liable for the legal consequences of his acts, both in civil and criminal cases; but the legal liability of a principal for the acts of an agent cannot be fixed by the declarations or statements of the agent except in certain well-defined classes of cases.   "It must be remembered," says Greenleaf, "that the admission of the agent cannot always be assimilated to the admissions of the principal.   The party's own admission, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when it is made, during the continuance of the agency, in regard to a transaction then depending, *et dum fervit opus.*   It is because it is a verbal act, and part of the *res gestæ*, that it is admissible at all, and therefore it is not necessary to call the agent himself to prove it."   1 Greenl. Ev. § 113.   Mr. Justice Story, in his work on Agency, (section 134), states the rule as follows:   "Where the acts of the agent will bind the principal, there his representations, declarations, and admissions respecting the subject-matter will also bind him, if made at the same time, and constituting a part of the *res gestæ*."   In Packet Co. v. Clough, 20 Wall. 540, the Supreme court of the United

States had occasion to refer to the rule as stated by Judge Story, and said: "A close attention to this rule, which is of universal acceptance, will solve almost every difficulty. But an act done by an agent cannot be varied, qualified, or explained, either by his declarations, which amount to no more than a mere narrative of a past occurrence, or by an isolated conversation held, or an isolated act done, at a later period. The reason is that the agent to do the act is not authorized to narrate what he has done, or how he has done it, and his declaration is no part of the *res gestæ.*" See Railroad vs. O'Brien, 119 U. S. 99. 7 Sup. Ct. Rep. 118. Mechem, in his treatise on Agency, (section 714,) in stating the grounds of the doctrine, uses the following language: "The reason is that, while the agent was authorized to act or speak at the time and within the scope of his authority, he is not authorized at a subsequent time to narrate what he had done, or how he did it." The following cases sustain and illustrate the strict rule: Randall v. Telegraph Co. 54 Wis. 140, 11 N. W. Rep. 419; First Nat. Bank v. Ocean Nat. Bank, 60 N. Y. 278; Waldele v. Railway Co., 95 N. Y. 274; Lund v. Tyngsborough, 9 Cush. 36; McDermott v. Railway Co., 73 Mo. 516; also Durkee v. Railroad Co. 11 Pac. Rep. 130; Bank v. North, 6 Dak. 136, 41 N. W. 736.

Applying the rule as stated by these authorities to the facts of this case we have no difficulty in reaching the conclusion that Lighthall's statements and declarations, which were made to the plaintiff some hours after the transaction with McCann had closed, and after McCann had departed, did not constitute any part of the act of receiving the wheat into the defendant's elevator, and were not contemporaneous with the act; but, on the contrary, such declarations were a mere isolated narrative of a closed and past transaction, and hence were not a part of the *res gestæ*, and therefore were inadmissible in evidence under the rule. But the strict rule has been relaxed somewhat in a number of the later American cases; and, aside from federal courts, the tendency in some of the states is to regard the mere point of time as less material, and to treat the declarations as admissible as part of the *res gestæ* if they spring directly from the transaction in controversy, and tend to

qualify, characterize, or explain it. According to the doctrine of these cases, each transaction is to be characterized by its own facts, without conclusive regard to a fixed interval of time, and with more regard to the question whether the declarations or admissions seem to have been voluntarily and spontaneously made under the immediate influence of the principal transaction, and are so connected with it as to characterize or explain it, and made under such circumstances as to exclude the possibility of a design to mistake the fact. See People v. Vernon, 35 Cal. 49; O'Connor v. Railway Co., 27 Minn. 166, 6 N. W. Rep. 481; Keyser v. Railway Co., 33 N. W. Rep. 867; Pilkenton v. Railway Co., 7 S. W. Rep. 805; Cleveland v. Newsom, 45 Mich. 62, 7 N. W. Rep. 222. See, also, dissenting opinion by Mr. Justice Field in Railroad Co. v. O'Brien, *supra*, citing the case of Railway Co. v. Coyle, 55 Pa. St. 402. But, under the rule as enunciated in the cases last cited, the declarations of Lighthall are inadmissible, and cannot bind the defendant. The statements were not volunteered, nor were they so closely connected with the principal transaction as to spring spontaneously from it, and characterize it. On the contrary, the declarations of Lighthall were made from his memory of a past event, just as they might and doubtless would have been made if the same inquiries had been made of him weeks or months after they were actually made. Under the evidence, it is obvious that the duties which were delegated to Lighthall could be fully performed without conferring upon him authority to bind the defendant by admissions having reference to matters not depending, but closed and completed before the admissions were made.

But the claim is made by counsel that the declarations and admissions of Lighthall, if not admissible in evidence as a part of the *res gestæ*, were yet competent upon another and independent ground. We quote from the brief of appellant's counsel: "The agent, Lighthall, had charge of that elevator, exclusive control of the business connected therewith. The inquiries were addressed to him while actually employed in that business, by one who had a right to the information sought. The inquiries were made at the earliest possible moment. The agent was

authorized, not by express authority, but in the usual course of business, to give information upon just such points. The inquiries were made within a few hours after the wheat was received, and, it is fair to presume, while it remained in his possession." The difficulty with this proposition is that, in all of its material features, it is wholly without support in the testimony. There is literally no evidence in the record tending to show that Lighthall "had charge of that elevator." Much less is there evidence that he had "exclusive control of the business connected therewith." It is not incompatible with the evidence that Lighthall acted in a purely subordinate capacity, and that other officers and agents of defendant had the general supervision of defendant's business at said elevator. It is certain, at all events, that no testimony was put in the record, tending to show any general agency in Lighthall. The testimony shows that his duties were special and circumscribed. Nor is it true that there is any evidence sustaining the claim of counsel that Lighthall had authority "in the usual course of business," to give information upon "just such points." No evidence was offered showing what the usual course of business was at that elevator or at any elevator. In the absence of proof, the court cannot arbitrarily assume the existence of any particular course of business at any elevator with reference to giving information to the public concerning transactions which are closed and completed before the inquiries are made. The statements in question may have been, and doubtless were, true, as a matter of fact. But, as a court of law, we must determine whether the statements were legally competent as evidence. If they were inadmissable under rules of evidence firmly established, and resting upon well-approved considerations of public policy, and expediency, they must be excluded, whether true or untrue.

For the reasons and upon the grounds already stated, we must hold that it was prejudicial error to admit the evidence against defendant's objections, which were seasonably made thereto. It seems probable that competent evidence to sustain the allegations of the complaint can be readily obtained, and we therefore direct that an order be entered setting aside the verdict, and reversing the judgment herein, and granting a new

trial of the action.    The costs of this court will abide the event of the suit.    All concur.

BARTHOLOMEW, J., having been of counsel, did not sit; TEMPLETON, judge of the first judicial district, sitting by request.