## LA RUE v. ST. ANTHONY & D. ELEVATOR CO.

1. The statements, representations, or admissions of an agent, to be admissible in evidence to bind his principal, must have been made at the time of doing the act he is authorized to do, and must have been concerning the act he was doing, either while actually engaged in the transaction or so soon thereafter as to be in reality a part of the transaction and constitute a part of the *res gestae.*

2. When an agent of an elevator company has purchased wheat, and received it into the elevator, where it is mingled with other wheat in such elevator, his statements, declarations, or admissions made subsequently, to a third person, as to the party from whom the said wheat was purchased, the parties who delivered the same, and the number of bushels delivered, are not admissible in evidence to bind his prin-

cipal, in the absence of evidence that he was specially authorized to make such statements or admissions, or evidence of a general custom that such agents possessed such authority.

(Syllabus by the Court. Opinion filed April 4, 1893.)

Appeal from circuit court, Marshall county. Hon. A. W. CAMPBELL, Judge.

Action by John S. La Rue against the St. Anthony & Dakota Elevator Company to recover the value of wheat mortgaged to plaintiff, and sold to defendant by the mortgagor. There was judgment for plaintiff, and defendant's motion for a new trial being denied, it appeals. Reversed.

The facts are stated in the opinion.

*John H. Perry*, (*Geo. P. Wilson* of counsel,) for appellant.

The plaintiff will be confined to compensation commensurate with the actual injury sustained. 3 Suth. Dam. 527; Gillilan v. Kendall, 42 N. W. 281. The admissions of an agent cannot bind the principal, unless they are part of the *res gestae*. Short v. Elevator, 45 N. W. 706; Ewell's Evans, Ag. 154; Bank v. North, 2 S. D. 480; Van Dorin v. Bailey, 51 N. W. 375. There must be a definite demand for the property or a refusal to deliver to constitute a conversion. Jones, Chat. Mtg. 491; Ware v. Society, 125 Mass. 584; 4 Am. & Eng. Enc. Law, 115; Sanford v. Bell, 48 N. W. 434.

*J. H. McCoy* and *H. R. Turner*, for respondent.

The question of demand is immaterial under an answer which denies plaintiff's title. Myrick v. Bell, 3 Dak. 284; Homan v. Laboo, 1 Neb. 207. The mortgage being filed as required by law was constructive notice to defendant. Nichols v. Barnes, 3 Dak. 148. The declarations of an agent bind the principal. Ayers v. Hubbard, 40 N. W. 10; 1 Green. Ev. § 113.

CORSON, J. This was an action brought by the plaintiff, as mortgagee, to recover the value of certain wheat alleged to have been delivered by one Henry J. Dove, mortgagor, to and received by the defendant. It is alleged in the complaint that said Dove

executed to the plaintiff a chattel mortgage, in which was included, among other personal property, all the wheat, grain, and other crops that should be raised on a certain quarter section of land, described in the mortgage, during the years of 1887, 1888, and 1889; that the mortgagor raised upon said land, during the year 1887, 1,200 bushels of wheat, which, under the terms of said mortgage, the plaintiff was entitled to have delivered to him on the 1st day of October, 1887; that on or about said 1st day of October the mortgagor. wrongfully and fraudulently sold and delivered to said defendant 700 bushels of said wheat, of the value of $400; and that the defendant received the same, and mixed it with other wheat in its elevator, with knowledge of plaintiff's right thereto; and that the plaintiff demanded said wheat of the defendant, and also the value or proceeds of the same, but the defendant refused to deliver the same or pay the value thereof. And the plaintiff demands judgment for $400, interest, and costs. The answer was a general denial, except as to 200 bushels, of the value of $120, which the defendant admits it purchased of said mortgagor, and which it was thereafter informed was raised upon the land described in the mortgage. The only evidence introduced on the part of the plaintiff to prove the amount of wheat delivered to the defendant raised upon said land was that of the plaintiff, who testified that he followed one load of wheat of about 50 bushels, from the land described to the elevator of defendant; the testimony of a witness, Tuck, that he drew one load of the wheat to the elevator; and the evidence of W. L. Hinkley, which, with the objections and exceptions, was as follows: "W. L. Hinckley, sworn, and testified on part of plaintiff as follows: 'I knew Henry J. Dove when he resided in Marshall county, about the 1st of October, 1887. I went to the elevator of the defendant in this case at Amherst, this county. I went there to get some wheat that was sold there by Dove. (Defendant objects. Witness answers:) I went there after wheat. Dove owned the wheat, I suppose. Mr. Dunn was the agent of the

elevator company, the St. Anthony & Dakota Elevator Company, at Amherst, at that time. Question. Did you ascertain from Mr. Dunn the amount of the Dove wheat that had been left at that elevator? (To which question the defendant objected, for the reason that the same is incompetent, irrelevant, and immaterial, and for the further reason that no statement made by Mr. Dunn at that time would be binding upon this defendant. The court overruled said objections, and to which ruling the defendant then and there excepted.) Answer. Yes, sir. Q. You may state in what manner you ascertained the amount of wheat within the elevator at that time, or had been deposited of that Dove wheat. A. I learned from his books and from him. (To which answer the defendant moved to strike out that portion "learned from him" and all the balance, because it is wholly incompetent. The statement of Dunn would not bind the company, and the books would be the best evidence of their contents. The court denied the motion, and to which ruling the defendant then and there excepted.) Q. You may state, if you know what amount of wheat—of the Dove wheat—had been delivered to the elevator of the defendant in this case, at Amherst, at any time. A. I have got it in a book here. The amount—(The defendant objects, for the reason that it is not the best evidence, which objection the court overruled, and to which ruling the defendant then and there excepted.) A. 449 bu. and 20 lbs. He (Dunn) told me it was the Dove wheat. I have the names of the parties who took the wheat to the elevator. Took the names from the books of the elevator. A. C. Pratt drew 48 bu. and 20 lbs.; H. B. Taylor, 38 bu. and 20 lbs.; A. C. Pratt, 48 bu.; L. Smith, 41 bu.; C. A. Tuck, 45 bu. and 20 lbs.; A. C. Pratt, 46 bu.; H. B. Taylor, 38 bu. and 20 lbs.; A. C. Pratt, 55 bu.; L. Smith, 44 bu.; L. Smith, 50 bu.,—in all 450 bu. and 20 lbs. This is the book I had with me, and I made the figures on October 1, 1887. This wheat at that time was worth 48 cents per bushel. It was poor wheat. I think the wheat checks were delivered to A. Sherin. I won't say for sure. I think so. It is so long

ago.' On cross-examination, witness testified as follows: 'I took the names and amounts from his book. He had a book in which he took the names of the parties that drew the wheat and the amount.'" The case was tried before a jury, and, at the close of the evidence, the defendant moved the court to instruct the jury that in no case could they return a verdict in favor of the plaintiff for a greater sum than $120. This instruction the court refused to give, and submitted the case to the jury, who found a verdict for the plaintiff for $300.55, upon which judgment was rendered in favor of the plaintiff. A motion for a new trial was made and overruled. Numerous errors are assigned, but, in the view we take of the case, it will only be necessary to consider the errors assigned as to the admission of the evidence of Hinkley, and the refusal of the court to instruct the jury as requested.

Under the allegations in the complaint and denials in the answer, it was incumbent upon the plaintiff, in order to entitle him to recover of the defendant for the value of more than 200 bushels of wheat, to establish by legal evidence that a greater amount of wheat, raised upon the land described in the mortgage, was delivered to and received by the defendant. It will be observed that, independently of the testimony of Hinkley, the evidence failed to show the delivery of wheat in excess of the amount admitted by the defendant, or that the value of the wheat was greater than the amount admitted by the defendant in his answer; hence the verdict of the jury must have been necessarily based upon the evidence of Hinkley. It will be observed that Hinkley does not assume to have any personal knowledge of the facts about which he testified, but admits that all his knowledge of the facts were such as he learned from Dunn, and from the books at the elevator. The question is therefore presented, was the evidence of Hinkley, as to the statements made to him by Dunn, the agent of the defendant, and as to the contents of the books, competent evidence to prove the number of bushels of wheat delivered to defendant, raised upon the land described in

41—S. D.

the mortgage? It is contended by the learned counsel for the appellant that the court erred in admitting the evidence of Hinkley, for the reason that the admissions of an agent cannot bind the principal, unless the admission is a part of the *res gestæ*. At what time the statements of Dunn were made with reference to the time of the purchase of and payment for the wheat does not appear, but it clearly appears that they were not made in connection with the transaction of the purchase, or in paying for the same, but were made subsequently thereto. It was a narrative by Dunn of a past transaction, not given in the line of his duty, so far as the evidence discloses, and not connected with any transaction then taking place in regard to the wheat. For whom Hinkley was acting in seeking information in regard to the wheat delivered does not appear, but it is quite clear he was not acting for Dove, the mortgagor. The law applicable to the admissions of an agent is stated by Mr. Mechem on Agency as follows: "And (3) the statements, representations, or admissions must have been made by the agent at the time of the transaction, and either while he was actually engaged in the performance or so soon thereafter as to be in reality a part of the transaction; or, to use the common expression, they must have been a part of the *res gestæ*. If, on the other hand, they were made before the performance was undertaken, or after it was completed, or while the agent was not engaged in the performance, or after his authority had expired, they are not admissible. In such a case they amount to no more than a mere narration of a past transaction, and do not bind the principal. The reason is that, while the agent was authorized to act or speak at the time and within the scope of his authority, he is not authorized, at a subsequent time, to narrate what he had done, or how he did it." Section 714. Mr. Greenleaf, in his work on Evidence, states the rule as follows: "The party's own admission, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when it is made during the continuance of the agency in regard

to a transaction then depending *et dum fervet opus.* It is because it is a verbal act, and part of the *res gestæ,* that it is admissible at all; and therefore it is not necessary to call the agent himself to prove it, but, wherever what he did is admissible in evidence, there it is competent to prove what he said about the act while he was doing it; and it follows that, where his right to act in the particular matter in question has ceased, the principal can no longer be affected by his declarations, they being mere hearsay." 1 Greenl. Ev. § 113. The doctrine thus stated seems firmly established by the authorities: Bank v. North, 6 Dak. 136, 41 N. W. Rep. 736, and 50 N. W. Rep. 621; Short v. Railroad Co., (N. D.) 45 N. W. Rep. 706; McDermott v. Railroad Co., 73 Mo. 516; Waldele v. Railroad Co., 95 N. Y. 274; Randall v. Telegraph Co., 54 Wis. 140, 11 N. W. Rep. 419; Goetz v. Bank, 119 U. S. 551, 7 Sup. Ct. Rep. 318; Packet Co. v. Clough, 20 Wall. 528; Insurance Co. v. Mahone, 21 Wall. 152; Railroad Co. v. Riddle, 60 Ill. 534; Steamship Co. v. Landreth, 102 Pa. St. 131; Clunie v. Lumber Co., (Cal.) 7 Pac. Rep. 708. We are unable to discover any theory upon which the evidence of the witness as to the statements of Dunn and as to the contents of the books could have been admissible in this case. So far as the statements of Dunn were given by the witness, it was hearsay evidence. The principle of the rule excluding such evidence is "that such evidence requires credit to be given to a statement made by a person who is not subject to the ordinary tests enjoined by law for ascertaining the correctness and completeness of his testimony; namely, that oral testimony should be delivered in presence of the court or a magistrate under the moral and legal sanctions of an oath, and where the moral and intellectual character, the motives and deportment, of the witness can be examined, and his capacity and opportunity for observation and his memory can be tested by cross-examination." 1 Greenl. Ev. § 124. The statement, therefore, of the agent as to transactions, closed and past, affecting the principal, whether made days, months, or years

subsequently, is made without the sanction of an oath, without the benefit of a cross-examination, and without being submitted to those tests the law has devised for the ascertainment of the facts in the case. The statements and admissions of Dunn were not admissible as statements or admissions against his interest, which is the principle governing the admissions of a party, as the statements or admissions created no liability as to him, but did tend to create a liability as against his principal, the defendant in this action. Had the statements or admissions of Dunn given in evidence in this case been made by him months after the transaction, and after he had ceased to be an agent of the defendant, it would not be seriously claimed that they would have been admissible. If not admissible under such circumstances, upon what principle of law were they admissible in this case? The only ground suggested by the learned counsel for the respondent is that the wheat was delivered on September 30th, and the statements of Hinkley were made October 1st, being a time so closely connected with the delivery of the wheat as to constitute a part of the *res gestæ*. But we cannot agree with the counsel in this position. As the wheat had been delivered and received into the elevator, and the transaction closed, the authority of the agent to make any statements or admissions in regard to it had terminated.

The agent Dunn was not shown by the evidence to have any special authority to give such information or to make statements as to the delivery of wheat to the elevator, and no general custom of the authority of such agent to make such statements or admissions is shown. In the absence of proof of a special authority of the agent, or a custom authorizing him to make such a statement, we must presume that he had only such authority as was necessary to transact the business of his principal, namely, to purchase and pay for wheat received into the elevator. To make statements or admissions in regard to such purchases, subsequently, to third persons, was not a power necessarily belonging to the

duties of an agent of an elevator company. It was therefore immaterial whether the statement was made one day or one year after the transaction was closed. We are of the opinion, therefore, that the evidence of Hinkley as to the statements made to him by Dunn were clearly inadmissible, and that his statement of what the book or books at the elevator contained was equally inadmissible. Whether or not the books themselves would have been admissible it is not now necessary to decide, as they were not offered in evidence. It follows, therefore, that the instruction asked by the defendant should have been given. For the error, therefore, in admitting the evidence of Hinkley, and the refusal of the court to properly instruct the jury, the judgment of the court below is reversed, and a new trial granted. All the judges concurring.