W. H. ROUNSEVILLE AND JAMES H. DOTY, CO-PARTNERS DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF ROUNSEVILLE & DOTY, v. A. P. PAULSON.

Opinion filed April 11, 1910.

**Principal and Agent—Declarations of Agent as Evidence.**

1. The declarations of an agent, not made while acting within the scope of his agency, are not binding on the principal.

**Principal and Agent — Declarations of Agent — Evidence.**

2. Evidence considered, and *held* not to show that certain declarations by the agent were made while acting within the scope of the agency.

Appeal from District Court, Stutsman county; *Burke, J.*

Action by W. H. Rounseville and James H. Doty against A. P. Paulson. Judgment for defendant, and plaintiffs appeal.

Reversed.

*Geo. W. Thorpe* and *Davis & Olson,* for appellants.

*Lee Combs* and *Alfred Zuger,* for respondent.

MORGAN, C. J.   This is an action in claim and delivery involving the ownership and right to the possession of certain grain purchased by the defendant from one MacDonald, a tenant of the plaintiffs, which grain is claimed by the plaintiffs to be their property. The complaint is in the usual form in such actions, and alleges plaintiffs' ownership and right to immediate possession, the wrongful taking by the defendant, and a demand for its return, and the full value of the grain—$500. The answer is a general denial. A return of the grain is demanded, or judgment for its value, if a return cannot be had. A jury was duly impaneled, and testimony taken and submitted by both parties. At the close of the testimony, each party moved for a directed verdict. Thereupon the trial court discharged the jury, and made findings of fact and conlusions of law favorable to the defendant. The plaintiffs moved for a new trial, which was denied. Judgment was entered upon the findings. The plaintiffs appeal from the judgment and from the order refusing a new trial. A statement of the case was duly settled in which the alleged errors are specified.

The pivotal question is the ownership and right to the possession of the grain. The trial court expressly found that the defendant was the owner of it, and entitled to its immediate possession. The question of such ownership is dependent upon the fact whether one Dunswell was plaintiffs' agent with authority to bind 'them by his acts and statements in reference to the grain. The trial court made no express finding as to agency, but, by finding the defendant to be the owner of and entitled to the immediate possession of the grain, necessarily found that Dunswell was plaintiffs' authorized agent. To show how these questions arise, a brief outline of the facts becomes necessary.

The grain in question was raised by MacDonald under a contract in writing. The material provisions of the contract are the following: MacDonald agreed to farm the land in a good and husbandlike manner, and to furnish the hired help, machinery, and teams at his own expense, and haul the grain to the elevator or

place it on the cars after threshing, if directed to do so by the second party. The second party agreed to furnish all the seed required each year. The contract also contained the following stipulations: "(a) And until the performance by him of every condition of this contract, the title and possession of all the products of said farm shall be and remain in the second party. (b) Each season, when the said first party shall have fully performed all his undertakings under this agreement for that season, then, upon reasonable request, the second party will give and deliver to the said first party at the place where they or any part of them may be stored, a share of all the products of said farm raised by him during the season, equal to one-half of the whole. (c) First party agrees to handle and haul second party's share of the crop to market. (e) It is understood and agreed that if, any season, the produce grown under this agreement, or any of it, shall be sold by either party previous to the final settlement, the proceeds thereof shall be accounted for instead of the produce sold, to the mutual advantage of the parties; and none of such produce shall be sold unless by consent of the second party previously obtained."

It is claimed by the appellants that the findings of fact are not sustained by the evidence, and the particulars in which the evidence fails to sustain the findings are pointed out and made a part of the statement of the case. The findings are attacked in two particulars: (1) That the evidence fails to show that the defendant was the owner of the grain in question; (2) that the evidence fails to show that the provision of the contract requiring a division was carried out, and that, in consequence of that fact, the title and right to the possession of the grain are still in the plaintiffs. It is a question in the case whether Dunswell was the agent of the plaintiffs for the purpose of settling with the tenant, MacDonald, under the contract. The plaintiffs had no negotiations personally with MacDonald as to the settlement of the contract for the year 1907, and all the negotiations relative to the delivery of the grain during that year were had with Dunswell. He was the agent of the plaintiffs for certain purposes. He was in charge of their grain elevator and lumber yard at Spiritwood, N. D., and was in charge of such elevator at the time that MacDonald delivered the grain during the season of 1907. Besides being in charge of the elevator and lumber yard, as plaintiffs' agent, he was also, at times, specially authorized to make settlements with

plaintiffs' tenants in regard to crop matters.  MacDonald was delivering the grain at the elevator, as he was required to do by the contract, and after he had delivered about one-half thereof, as estimated, MacDonald asked the agent for money with which to pay some bills.  The agent computed the number of bushels already at the elevator, and gave MacDonald a check for $700, which represented the price of the grain that he had already delivered only.  In respect to what transpired between Dunswell and the defendant thereafter is stated by the defendant in the following language: "I saw Dunswell after I saw MacDonald on the 26th, before I paid for the wheat; told him I had purchased from MacDonald, and was going to buy 500 bushels of durum and 200 bushels bluestem.  Dunswell said that was all right, that he had bluestem and durum grain on the farm, and it was perfectly satisfactory to him; and I also asked him if it could be stored there until spring, or until such time as I wanted it, and he said that it would be all right, to go ahead and buy it; I told him I would require about 500 bushels durum and 200 bushels of bluestem; he told me on the following Sunday that MacDonald had told him how much was there.  He did not tell me that I could have any of Rounseville & Doty's share of the grain; he told me that he had settled up with MacDonald for Rounseville & Doty.  *  *  *  I saw Dunswell in control of the elevator, lumber yard and hardware business of Rounseville & Doty; did not see him at the farm; went with him to farm the first time September 29th.  *  *  *  Dunswell told me on the 26th that one-half the grain belonged to MacDonald.  The statement of Dunswell and the transaction which I saw led me to believe that a settlement had been made.  I would not have bought the grain if I had known or had been led to believe that Rounseville & Doty claimed it.  I relied upon the statement and the check and the evidence before me, believing that the settlement had been made."

It is not claimed that a division of the grain grown at the farm had been made at this time.  It is also true that MacDonald had not, at this time, hauled plaintiffs' share of the grain to the elevator, and that no provision was made in reference thereto by MacDonald.  Defendant was not at the elevator when MacDonald delivered the grain and received the check for $700.  The conversation which the defendant relies on was had with Dunswell after what transpired between MacDonald and Dunswell at the ele-

vator. This was a day or two after what had transpired between these parties at the elevator. What defendant relied on was the declaration of Dunswell in reference to the contract with MacDonald, but these declarations were not made in MacDonald's presence, and were made after the delivery of the wheat at the elevator. There was no express waiver of the contract, but that would be immaterial if Dunswell settled with MacDonald and released him from all his obligations under the contract, and had authority to do so. There was nothing said at the interview between MacDonad and Dunsewell showing that the contract and the obligations under it were under consideration. The talk between them was solely in reference to payig MacDonald some money for wheat already delivered. There was nothing said about the delivery of the balance, or whether the contract had been fully complied with on MacDonald's part. There is no basis for the claim that Dunswell was a general agent for the plaintiffs, having full authority to speak for them at all times. The most that could possibly be claimed from defendant's showing is that Dunswell had authority to settle with MacDonald under previous, limited instructions. It is clear that he was not authorized under the showing made, to settle with MacDonald upon his own judgment or responsibility.

However, it is not necessary to determine whether the evidence would sustain a finding that Dunswell had authority to settle with MacDonald. There is no evidence that he did settle with him, and there is no evidence that he was authorized to waive the conditions of the contract, and there is no evidence that he did waive their fulfillment. The payment of the $700 was not a final settlement of the matters between the plaintiffs and MacDonald. Dunswell's evidence shows that it was only payment for the grain actually delivered, and he is the only witness testifying on that subject. Under the express terms of the contract, such payment was simply an advancement "solely for his convenience, and that in making such advance the second party does not waive its title to, or possession in part of, the remaining grain or any products of said farm, but such title and possession shall be and remain in the said second party until the complete performance of this agreement in the time and manner aforesaid." Under this provision of the contract, it is clear that the payment of the $700 was not a waiver of full performance of the contract. No other act

between MacDonald and Dunswell can be claimed to be, or is claimed to be, a settlement of the contract or waiver of its terms. The defendant's claim to the grain is based upon a purchase from MacDonald under what he asserts to be the express sanction of Dunswell, who, he claims, stated to him that he had settled with MacDonald, and that it was all right for him to buy the grain. In other words, the claim of a waiver of the contract by Dunswell as agent is based upon his declarations made to the defendant after the payment of the $700. If Dunswell had such authority from the plaintiffs, defendant's right to the grain cannot be denied, as he did not pay for the grain until told by Dunswell that a settlement had been made between the plaintiffs and MacDonald. Plaintiffs themselves could waive all the terms of the contract, if they so elected, and they could authorize an agent to do whatever they themselves might do. The question is, Did they authorize Dunswell to act for them to this extent? If he had authority to waive the terms of the contract, the plaintiffs cannot recover. If he had no such authority, the defendant cannot recover. The evidence does not show that Dunswell had actual authority to waive any of the terms of the contract. Dunswell denies that he made any settlement with MacDonald, and denies making any of the declarations which defendant claims were made as to the settlement with MacDonald, and denies that he consented that the wheat might be purchased by the defendant. Everything which the plaintiffs authorized Dunswell to do in this matter was to take the wheat delivered and take security for the balance due. As stated before, there was no settlement between MacDonald and plaintiffs through Dunswell. If the defendant had been present at the elevator when the conversation took place between the agent and MacDonald, when the $700 check was delivered, he would not have been justified in relying upon what took place there as a settlement of the MacDonald contract. The question, therefore, is, Are the plaintiffs bound by the statements alleged to have been made by Dunswell to defendant that the contract was settled, and that he had a right to purchase and pay for the grain left at the MacDonald place? It will be noticed that this conversation was made long after the delivery of the wheat at the elevator for which the $700 was paid. No express authority was given Dunswell to make this statement. He was not, at that time, acting in the course of his agency in regard to the settlement of the contract un-

der special instructions. It is settled in this state that the declarations of an agent are not competent proof of his authority to act, and that the principal is not responsible or bound by the declarations of an agent not made in the course of an agency.

In Short v. N. P. Elev. Co., 1 N. D. 159, 45 N. W. 706, the court said: "It is elementary that a principal in a transaction may, by his admission or confession made at any time, either before or after the event, render himself liable for the legal consequences of his acts, both in civil and criminal cases; but the legal liability of a principal for the acts of his agent cannot be fixed by the declarations or statements of the agent except in certain well-defined classes of cases. (Citing cases.) Applying the rule as stated by these authorities to the facts of this case, we have no difficulty in reaching the conclusion that Lighthall's statements and declarations, which were made to the plaintiff some hours after the transaction with McCann had closed, and after McCann had departed, did not constitute any part of the act of receiving the wheat into the defendant's elevator, and were not contemporaneous with the act; but, on the contrary, such declarations were a mere isolated narrative of a closed and past transaction, and hence were not a part of the res gestæ, and therefore were inadmissible in evidence under the rule." This case has been followed in many subsequent cases in this court, and the principle announced is so well established that further citations are unnecessary.

From the evidence, and on applying the principle laid down in that case, it is clear to us that the plaintiffs are not responsible for the declarations of Dunswell, which were made while not engaged in carrying out any of his duties as agent of the plaintiffs. These statements, some of them made on Sunday at the farm, were not made in connection with any of the agent's duties. In other words, they were not made while the subject-matter of the agency was being carried out.

There is no evidence of ratification by the plaintiffs of the acts of Dunswell. Plaintiffs are therefore entitled to the possession of the grain for the purpose of securing their rights under the contract. See Wadsworth v. Owen, 17 N. D. 173, 115 N. W. 667.

The order and judgment are reversed. All concur.